(Reap. Dec. 9524)

GITKIN CO. *v.* UNITED STATES

Entry No. 15207–1/2, etc.

(Decided October 23, 1959)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

MOLLISON, Judge: The 70 appeals for reappraisement enumerated in the attached schedule were consolidated for the purposes of trial and disposition together, and relate to importations of bamboo blinds and similar articles from Japan during the years 1956 and 1957.

At the trial of the issue, counsel for the plaintiff herein limited the appeals for reappraisement to those importations in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan.

As the issue is presented, it involves the question of whether Nosawa & Co., Ltd. (hereinafter referred to as Nosawa), was the actual seller of the merchandise covered by its invoices or whether it was merely the buying agent of the importer, plaintiff herein, the actual sellers being the manufacturers of the goods located in various places in Japan. The plaintiff's position is that Nosawa was its buying agent, while the defendant's position is that Nosawa was the seller of the merchandise.

In all cases, the Nosawa invoices show unit prices in United States dollars for each type of merchandise, which are denominated thereon as "ex-factory" prices, and each invoice bears a statement that a specified amount is included in the said factory prices for "export bales and packing charges."

Separately stated on the invoices, and not included in the "ex-factory" price, are five items, namely, inland freight from the maker to shipping port, insurance premium from go-down to on board, storage, hauling and lighterage, and buying commission, together with various amounts in United States dollars opposite each item. For convenience in this decision, the first four items will be referred to as "inland charges" and the last item as "buying commission."

It appears that in each case the merchandise was entered at the invoice unit prices, that is to say, the "ex-factory" prices, without the inclusion of the inland charges or buying commission.

In all cases, the merchandise was appraised on the basis of export value, which is defined in section 402(d), Tariff Act of 1930, but the mechanics of the appraisements were accomplished in two different ways. In some cases, the appraisement was at invoice unit prices (i.e., the "ex-factory" prices), plus inland charges and buying commission as invoiced, packed. In other words, in those cases, the difference between the entered and appraised values was the amount of the inland charges and buying commission.

In the other cases, the appraisement was at a single value stated in United States, dollars, packed. It was stipulated by counsel for the parties that in such cases—

* * * the appraised values include alleged buying commissions, and inland freight, and other charges in at least the amounts as shown in the invoices in such cases. [Tr. p. 84.]

In other words, it is understood that, in the latter cases, the appraiser not only included in the appraised value the inland charges and buying commission as invoiced, but also advanced the invoice unit prices. In all such cases, it is understood that the plaintiff does not dispute the advances made by the appraiser over the invoice unit values, but disputes only the inclusion of the inland charges and the buying commission in the appraised value. The sole claim of the plaintiff in all cases is that the correct value of the merchan-

dise is the appraised values, less the amounts included therein for inland charges and buying commission.

Although some reference was made at the trial to foreign value (defined in section 402(c), as amended, Tariff Act of 1930), it appears that foreign value for either such or similar merchandise is not involved. This is apparent from the positions of the parties, both of whom claim on the basis of export value, and also from statements appearing in evidence offered by both the plaintiff and defendant to the effect that merchandise the same as or similar to that sold for export is not offered in the home market for domestic consumption.

To sum up, both parties contend that the merchandise is properly dutiable on the basis of export value, the difference between the values contended for being the amount of the inland charges and buying commission included in the appraised value.

In support of its contention that Nosawa was its buying agent for the merchandise here involved, and not the seller of the said merchandise, plaintiff offered documentary and testimonial evidence to establish that an agreement in writing existed delineating the relationship existing at the times here involved between the importer and Nosawa. The documentary evidence consists of what was offered as the agreement itself, received in evidence as plaintiff's exhibit 1, and a reference thereto contained in the affidavit of one K. Hitomi, received in evidence as plaintiff's exhibit 15. The testimonial evidence is that of Harold M. Stuart, the manager of the plaintiff, who signed the agreement on behalf of the plaintiff.

As to the circumstances under which the written agreement came into being, plaintiff's witness Stuart testified that, shortly after being employed by the importer, in June 1955, he visited Japan and that, at a date prior to August 15 of that year, the agreement was drawn in Kobe and signed by himself for the plaintiff and a representative on behalf of Nosawa.

The text of the agreement is as follows:

This is to confirm our understanding as follows:–

(1) Gitkin Company hereby appoints Nosawa & Co., Ltd., Kobe Branch as its buying agent in Japan.

(2) Nosawa must visit manufacturers, collect samples and submit same to Gitkin Company every now and then with full market report quoting prices at which the goods can be purchased.

(3) Upon instructions from Gitkin Company, Nosawa is to place orders with manufacturers, inspect the goods and arrange shipments.

(4) All the goods purchased by Nosawa for Gitkin Company should be done on Ex-factory basis.

(5) Nosawa is entitled to a buying commission of 5% on Ex-factory prices.

(6) Gitkin Company is to open irrevocable letters of credit in favor of Nosawa immediately upon placing orders with the latter.

(7) Consular and commercial invoices have to be made out in the U.S. Dollar on the basis of Ex-factory specifying all charges like inland freight to port, insurance to steamer, storage, hauling and lighterage, etc. as well as agent's buying commission.

(8) This contract comes into effect on and after the 15th of August 1955 and will continue automatically till a written notification is submitted by one of the parties with three (3) month previous notice.

(9) It is understood and agreed that the agency created is not exclusive.

According to the witness, the foregoing was superseded by another agreement, effective November 25, 1957, a copy of which was given to a Treasury representative during the course of an investigation of Nosawa in 1958, and is included as part of his report received in evidence as defendant's collective exhibit B. The superseding agreement contains more detail, but is essentially the same in effect as plaintiff's exhibit 1.

In an affidavit, received in evidence as plantiff's exhibit 15, K. Hitomi, identified therein as managing director of Nosawa, refers to the agreement hereinabove quoted.

There is no evidence offered on the part of the defendant tending to establish that the agreement hereinbefore quoted did not exist, but, on the contrary, such evidence as was offered on behalf of the defendant is compatible with the existence of such agreement. I am, therefore, of the opinion that it was sufficiently established that the agreement existed.

. The agreement spells out a buying agent-principal relationship between Nosawa and the plaintiff-importer, and, if the evidence offered establishes that it was executed according to its terms, I am of the opinion that a *prima facie* case in favor of the plaintiff's claim has been made out.

It must be remembered that the plaintiff has challenged only the inclusion of the inland charges and the buying commission in the value of the merchandise. As to the buying commission, if the evidence establishes that Nosawa was, in fact, the buying agent of the importer in these transactions, its commission is not a proper part of the dutiable value of the merchandise. *United States* v. *Kresge Co. et al.*, 26 C.C.P.A. (Customs) 349, C.A.D. 39, and cases therein cited.

As to the inland charges, if the evidence establishes it was possible to purchase merchandise such as that here involved at a price which did not include the inland charges, i. e., at an ex-factory price, then the inland charges were not properly part of the dutiable value of the merchandise. *United States* v. *Paul A. Straub & Co., Inc.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553, and *Albert Mottola, etc.* v. *United States*, 46 C.C.P.A. (Customs) 17, C.A.D. 689. See also *United States* v. *Lyons*, 13 Ct. Cust. Appls. 639, T.D. 41484.

The testimony of witness Stuart, Hitomi's affidavits (plaintiff's exhibit 15 and collective exhibit 16), offered by the plaintiff, and the

testimony of witness Ashida, offered by the defendant, establish that in the purchase of the merchandise here involved Nosawa's function was that of buying agent for which it charged and received a buying commission of 5 per centum of the ex-factory prices. Corroborative evidence of this fact is to be found in plaintiff's collective exhibits 3 to 14, inclusive, being the affidavits of certain of the actual manufacturers of the merchandise here involved. There is nothing contained in the documentary evidence offered on behalf of the defendant, collective exhibits A and B, being reports, together with certain exhibits referred to therein, of Treasury representatives, which controverts any of the statements made by Stuart, Hitomi, or Ashida in this regard, but, on the contrary, the evidence contained therein tends to corroborate that offered by the plaintiff.

Thus, the defendant's evidence shows that Nosawa had no financial, managerial, or other interest in the manufacturers, and that there was no oral or written agreement that Nosawa should, or would, take the entire output of the factories. None of the facts shown establish, or even indicate, that the position of Nosawa in the transactions here involved was other than that of buying agent for the importer.

I am satisfied that, in the transactions represented by the importations here under appraisement, Nosawa acted as buying agent for the plaintiff, and not as seller of the merchandise or as agent of the seller, and that the services which it performed and for which it received a commission were the usual services of such agents in Japan in the purchasing, inspection, and shipping of the merchandise. The commissions were, therefore, not properly included as part of the value of the merchandise for appraisement purposes.

The amount of these commissions is not in question. In those cases where the appraiser added the commissions to the invoice unit values in making his appraisement, he adopted the charge for commissions as invoiced, while in the other appraisements here involved it is stipulated that the value returned by the appraiser included commissions "in at least the amounts as shown in the invoices." Inasmuch as it is understood that the defendant is not claiming that the commissions were in greater amounts than those invoiced, it follows that, in all cases, the appraised value included the amounts of commissions as stated on the invoices.

Since the defendant's position is that the appraised values are correct, and the plaintiff does not question the accuracy of the amounts for commissions as stated on the invoices and included in the appraised values, under the principles expressed in *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, the amount of the commissions is not in question and was not a required item of proof.

Turning, therefore, to the question of the inland charges, as has been said, determination of that issue depends upon how merchandise such as that here involved was offered for sale by the manufacturers, i.e., whether it was offered for sale only f.o.b. Kobe, as defendant contends, or ex-factory, as plaintiff contends, or on some other basis.

The chief evidence offered by the plaintiff with respect to the manner in which merchandise such as that here involved was offered for sale in Japan for exportation to the United States, at or about the time of exportation of the shipments under appraisement, consists of 12 affidavits executed by the owners or officers of 12 of the 19 (or so) manufacturers of the merchandise at bar.

In each of these affidavits, the affiant states that the merchandise manufactured by him or his company was offered and sold to all who wished to buy on an ex-factory basis, or, at the purchaser's election, on a basis of delivery ex-warehouse or ex-go-down designated by the purchaser. All of the affiants stated that all of their sales to the importer in this case were at ex-factory prices. Some of the affiants incorporated in or attached to their affidavits (*vide* collective exhibits 3, 4, 5, 6, 7, and 14) lists of sales made during the years 1955, 1956, and/or 1957, and, in such cases, attached to the affidavit all of the contracts, orders, or invoices involved in such sales or what they termed "representative" contracts, orders, or invoices of such sales.

An examination of the evidence of sales attached to those affidavits shows that none of them indicate an f.o.b. Kobe sale price, that is, a price *delivered on board of the exporting vessel in Kobe*. Some show prices ex-factory of the manufacturer; some show prices delivered ex-go-down or ex-warehouse of, or designated by, the purchaser in Kobe; and some show prices delivered at warehouses or factories located elsewhere than in Kobe. Moreover, even defendant's own evidence indicates that when filling orders from Nosawa the price the manufacturers received "is for the merchandise delivered to the Kobe port *or to the shipper's Kobe warehouse*, usually packed and ready for delivery." [Italics added.] (Defendant's collective exhibit A, p. 3, par. (d).)

Even assuming that there were some offers and sales f.o.b. Kobe, the overall picture is that of a market in which the sellers were anxious to sell their merchandise and were not inclined to quibble over the price insofar as it included delivery charges to places other than the factory.

The situation is quite the opposite of that which was involved in the *Straub* and *Mottola* cases, hereinbefore cited. In those cases, the evidence was that the merchandise could not be purchased on any other basis than f.o.b. port of exportation. Here, the evidence shows that the purchaser could have the goods on any delivery terms (with correspondingly scaled prices according to the place of delivery) he

wished. In such circumstances, the ruling of the *Straub* and *Mottola* cases is not applicable, but the ruling in the *Lyons* case, *supra*, is. In the *Lyons* case, it was held that where goods could be bought at the factory for the invoice price, less freight to the port of exportation and other charges, the freight should have been allowed.

For the same factual and legal reasons that the amount of the commissions paid to the buying agent, Nosawa, was not in question in these cases, the amount of the inland charges is also not in question.

There does not seem to be any question but that orders for merchandise such as that here involved were placed with the manufacturers at their factories, and accepted by them there. The factories, therefore, were the principal markets in Japan for the offer and sale of such merchandise, and delivery costs elsewhere are not part of the dutiable value of the merchandise.

On the record before me, I find as facts:

(1) That the merchandise involved in the appeals for reappraisement, enumerated in the attached schedule, consists of bamboo blinds and similar articles exported from Japan during the years 1956 and 1957.

(2) That at the time of exportation of the involved merchandise, merchandise such as or similar thereto was not freely offered for sale for home consumption in Japan.

(3) That at the said time merchandise such as that involved in the appeals for reappraisement, enumerated in the attached schedule, in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan, was produced by various manufacturers located in or at various distances from Kobe, Japan, and that the said factories were the principal markets in Japan for the offer and sale of such merchandise for exportation to the United States.

(4) That in the case of the transactions and entries represented by the said appeals for reappraisement in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan, the importer employed the said firm as buying agent; that the services performed by the said firm were those of a buying agent; and that, for its services as such buying agent, it was paid a commission in the amount of 5 per centum of the ex-factory, packed price.

(5) That at the time of exportation of the merchandise covered by the said appeals for reappraisement in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan, the manufacturers freely offered such merchandise for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, on any delivery basis selected by the purchaser, including ex-factory, and that the prices at which such merchandise was so offered ex-factory, including the cost of all containers and coverings of whatever nature, and all other costs,

charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, were the appraised values, less the amounts included therein for inland freight, insurance, storage, hauling and lighterage, and commissions.

(6) That as to the merchandise involved in the appeals for reappraisement, enumerated in the attached schedule, other than that in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan, there is no proof of any other value than that returned by the appraiser.

I conclude as matters of law:

(1) That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise covered by the appeals for reappraisement, enumerated in the attached schedule, in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan;

(2) That such value as to such merchandise is as found in finding of fact No. 5 above, and

(3) That as to all merchandise involved in the appeals for reappraisement, enumerated in the attached schedule, other than that in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan, by operation of section 2633 of title 28, United States Code, the correct value of such merchandise is the appraised value.

Judgment will issue accordingly.