(Reap. Dec. 9627)

VALLEY KNITTING CO., INC., ET AL. v. UNITED STATES

Entry No. 44846, etc.

(Decided March 8, 1960)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

RAO, Judge: The four appeals for reappraisement here involved, which have been consolidated for purposes of trial, raise the question of whether certain inland charges included in the f.o.b. price of men's, boys', and infants' cotton wear, exported from Japan, are properly to be considered part of the value of such merchandise.

The articles covered by each of these appeals were appraised at their respective invoice unit values net packed. Although the fact is not formally so stated in the official papers, which are in evidence in this case, or in the record, it may be assumed that the appraiser adopted as the basis of his return, export value, as defined in section 402(d) of the Tariff Act of 1930. Said provision reads as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and

expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiffs here contend that a so-called buying commission of 5 per centum and various charges for inland freight from factory to seaport, storage, insurance, and hauling and lighterage, included in the invoice unit values, are not part of the export value of the involved merchandise. It is asserted that export value is the proper basis of appraisement but that such values with respect to the instant merchandise are the ex-factory prices, exclusive of the above-mentioned charges.

The statement of the opposing positions in this case brings into focus a recent series of decisions both by this court and by the Court of Customs and Patent Appeals on the general subject of whether or not inland freight and related charges are to be considered as part of the export value of imported merchandise.

In the case of *United States* v. *Paul A. Straub & Co., Inc.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553, it was held that where all sales were made in the principal market (factory site) on an f.o.b. port of exportation basis, and no sales were ever made ex-factory, the f.o.b. price, including freight costs, represented the export value of the merchandise. Of interest to the present dispute are the following excerpts from the court's decision:

It is entirely clear from the terms of the stipulation that all sales or offers for sale were made at Selb-Stadt, the factory and principal market, on an f.o.b. Bremen basis. It is equally clear that no sales or offers for sale were ever made on an ex factory basis so that the freely offered price for such or similar merchandise in the principal market was the f.o.b. Bremen price and that price only. In other words, all sales or offers for sale were made for delivery at the port of exportation and no sales or offers for sale were made for delivery in Selb-Stadt. Availability of the merchandise to all purchasers was thus predicated on a single price and that price included freight costs between Selb-Stadt and the port of exportation, Bremen.

\* \* \* \* \* \* \*

The official invoice papers disclose that the charge for freight was included in the unit prices, and as the appellant aptly observes, "there is no showing of record of separate unit prices for the goods and separate unit freight charges per unit of merchandise." The appellant continues by referring to section 500(a)(1) of the Tariff Act of 1930 [19 U.S.C. sec. 1500(a)(1)] wherein it is stated that merchandise is subject to appraisement "in the unit of quantity in which the merchandise is usually bought and sold \* \* \*." Repeatedly emphasizing that "the goods were only freely offered for sale to all purchasers in Selb-Stadt in the usual wholesale quantities and in the ordinary course of trade at the f.o.b. Bremen prices appearing upon the invoice, which included an item of freight," the appellant feels that the appraiser's finding of value was correct and should not have been disturbed.

\* \* \* \* \* \* \*

In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f.o.b. Bremen basis. There is no showing that

the goods could be purchased at the invoice price less freight. The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and as the appellant states, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment*, and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

The principle of the *Straub* decision was reaffirmed in the case of *Albert Mottola, etc.* v. *United States*, 46 C.C.P.A. (Customs) 17, C.A.D. 689, in respect to merchandise offered for sale in Tokyo, Japan, at an f.o.b. Yokohama price, where it appeared that there were no offers for sale for delivery in Tokyo, the principal market, at prices which did not include the contested charges. It is to be noted, however, that the rulings in both cases hinged upon the peculiar fact that purchases could not be made ex-factory, and all sales were made f.o.b. port of exportation, all charges included. As observed by the court in said *Mottola* case:

While the language of the Tariff Act of 1930 differs from that of the Act of 1883 [involved in the case of *Robertson* v. *Bradbury*, 132 U.S. 491] we are of the opinion, as was the Customs Court, that the 1930 Act does not contemplate that inland freight charges in the country in which the merchandise originates are ordinarily to be included in the export value. As was clearly indicated in the *Straub* decision, such changes are not to be included if the merchandise can be purchased in the principal market at a price which does not include the charges.

In the case of *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71, it was held that the general rule thus stated, rather than the particular exception involved in the *Straub* and *Mottola* cases, applied in connection with certain export charges, where it was shown that ex-factory offerings were freely made to all purchasers at prices which did not include such charges. In view of the contention in the present action that the facts here are the same in all material respects as those which were involved in the *Brechner* case, a somewhat detailed analysis of that decision seems warranted.

It there appeared that it was the custom of the importer to make rather frequent trips to Japan for the purpose of purchasing an assortment of goods. It was his practice to call upon the various manufacturers at their places of business, in the company of a Japanese agent who acted as interpreter, or to have the manufacturers call at the office of the Japanese agent. Negotiations were conducted to arrive at a satisfactory price, after comparison with other manufacturer's prices for similar wares. The price eventually agreed upon was the manufacturer's ex-factory price, which included only the manufacturer's profit, and was quoted in yen. The agent converted the yen price into United States currency, added an estimate of shipping charges, and his commission of 5 per centum, and then gave the im-

porter a so-called f.o.b. price. Prior to shipping, the agent checked the quality of the merchandise, consolidated shipments from various manufacturers, prepared consolidated invoices, and arranged for the exportation of the merchandise.

A typical consolidated invoice prepared by the Japanese agent was described in the decision as follows:

* * * This exhibit shows five orders from five different Japanese manufacturers, the dates of acceptance of said orders, the first cost or ex-factory price per gross, in United States dollars, and the total first cost or ex-factory price, including case and packing charges. Added to said total are the following items, listed as "EXPORT CHARGES": Inland freight from Tokyo to Yokohama; storage; hauling and lighterage; a commission on the total first cost or ex-factory price; and the consular fee.

This method of invoicing together with a stipulation of the parties conceding that the issues in the case were limited to the site of the principal market, and the question of whether the disputed charges were properly a part of the value of the merchandise, led the division to agree with the trial court that the appraiser's return was "in effect an appraisement at invoiced 'first cost' or *per se* prices, plus packing, plus the disputed additions for commission and export charges." Accordingly, the appraisement was viewed as an aggregate of separable elements, any one of which could be attacked without disturbing the presumption of correctness which attached to the unchallenged items, citing *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, and *United States* v. *Freedman & Slater, Inc.*, 25 C.C.P.A. (Customs) 112, T.D. 49241. Under this construction, it was held that plaintiffs were entitled to rely upon the appraiser's adoption of the *per se* unit values as establishing export value within the statutory definition, without presenting independent proof of the prices at which the merchandise was freely offered for sale in the principal markets of the country of exportation in the usual wholesale quantities and in the ordinary course of trade. Predicated upon the showing of ex-factory sales at prices which did not include the disputed export charges, those charges were held not to be a part of the value of the merchandise in issue.

In many respects, the evidence in the instant case parallels the factual structure of the *Brechner* decision, but, for reasons hereinafter to be discussed, I am constrained to hold that its principles do not control the disposition of the issues here raised.

Here, as in the *Brechner* case, a representative of the importers testified that he personally visited the Japanese manufacturers of the merchandise they decided to buy in the company of an agent acting primarily as interpreter, "basically styling and setting up merchandise with them." Net prices were agreed upon to which the agent added all inland freight charges, handling charges, insurance, and all other expenses, plus the agent's buying commission. The agent

consolidated all contracts; paid the manufacturer for his merchandise on an ex-factory basis; paid all inland charges; and retained its commission.

He further testified that the buying agent employed by his companies was the Japanese firm of Nanko Bussan, Ltd., and, notwithstanding certain documentary evidence introduced by defendant and tending to establish a purchaser-seller relationship between the parties, insisted that their arrangement was that of principal and agent, and that he never made any direct purchases from Nanko Bussan as seller.

In the view that is here taken, further inquiry into the nature of this documentary evidence, and its effect, if any, upon the relationship of the Japanese exporter and the plaintiffs is not considered necessary. For the purposes of this case, it is sufficient to assume that Nanko Bussan, Ltd., was in fact the purchasing agent of the plaintiffs.

In an affidavit introduced into evidence as plaintiffs' exhibit 1, Yoshihiro Esaki, the manager of the export department of Nanko Bussan, Ltd., formerly known as Nanko Bussan Kabushiki Kaisha, stated that his company was employed as buying agent by Valley Knitting Co., Inc., of New York and by Vee Kay Import Co., Inc. In that capacity, and upon receipt of instructions from his principals, he places orders for merchandise which they desire to purchase, and is personally familiar with the prices and the terms and conditions of the sale thereof. After specifying the names of the suppliers, affiant stated:

* * * During this entire period each of these manufacturers has freely offered for sale and sold merchandise identical or so substantially similar as to be commercially interchangeable with the merchandise listed below without any restriction whatsoever as to resale prices, disposition, use or in any other respect. Each and every one of these sales has been at an ex-factory price, that is, delivery is made to the purchaser or his agent at the factory. The charges arising after the merchandise leaves the factory are for the account of and are paid for by the purchaser or his agent. The price is completely independent of the quantity purchased. The Osaka-Kobe areas is the principal market of Japan for the sale of the following merchandise for exportation to the United States.

Esaki further showed by means of documents annexed to his affidavit, but not covering any of the shipments here involved, his procedure with respect to invoicing merchandise purchased by plaintiffs. This consisted of increasing the manufacturers' gross invoice price by 5 per centum to cover his company's buying commission and adding thereto a lump sum for charges actually incurred in bringing the merchandise from the factory and putting it on board the vessel. When invoicing the goods to plaintiffs, the shipper quoted the f.o.b. Kobe unit prices, and thereafter itemized the total export charges for each shipment.

In the different method of invoicing, lies the essential distinction between this and the *Brechner* case, *supra*. There, it will be recalled, each of the invoices showed an ex-factory or first-cost price which, it was held, the appraiser adopted as the *per se* unit price. Because of this method of appraisement, a presumption of correctness attached to those unit prices which obviated the need for proof of ex-factory prices at which the merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country of exportation.

In the instant case, appraisement was made at the invoice unit values net packed. This was an indivisible unit value which presumptively included all charges and was not susceptible of being broken down into components of ex-factory costs, plus export charges, so as to permit the challenging of one or more elements of the appraisement while relying upon the presumption of correctness of the appraiser's return as to any unchallenged items. Accordingly, it was incumbent upon the plaintiffs, not only to establish that the appraiser's action was erroneous, but to prove affirmatively every material element in the basis of value upon which they rely. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C.C.P.A. (Customs) 36, T.D. 43324; *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495.

Export value is defined, *supra*, as the *price* at which such or similar merchandise is freely offered for sale, and it should not have to be stated that a value expressed in terms of a price is a primary requisite. Yet, although both the witness for the plaintiffs and the affiant stated that ex-factory prices were agreed upon with the manufacturers, and it is further stated in the affidavit that the manufacturers freely offered their merchandise for sale to all purchasers, without restriction and without quantity variations, there is not a scintilla of evidence in the record to show what those ex-factory prices were, nor whether ex-factory prices were the same for all purchasers.

For the reasons, *inter alia*, that several different manufacturers served as suppliers; that shipments from them were not necessarily received by the agent at the same time; that freight charges from each manufacturer's place of business could not possibly be identical, it may not be assumed that the export charges for the total number of units shipped are equally apportionable to the separate units comprising each shipment. "There is no showing of record of separate unit prices for the goods and separate unit freight charges per unit of merchandise." *United States* v. *Paul A. Straub & Co., Inc., supra.* Without such evidence, there are no figures which will enable the court to find an ex-factory price for each of the several items of merchandise covered by these importations.

Furthermore, the statement standing alone and unaccompanied by evidence of sales or pricelists or other factual data that the manufacturers freely offered such or similar merchandise to all purchasers is but a conclusion of the affiant which possesses no evidentiary value. *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593.

Moreover, since section 402(a) of the Tariff Act of 1930 provides that the value of imported merchandise shall be the foreign value or the export value, whichever is higher, it was likewise incumbent upon plaintiffs to negative the existence of a higher foreign value for such or similar merchandise. Nevertheless, the record is barren of evidence on that issue.

The court is, therefore, constrained to hold that the presumption of correctness of the appraiser's return of values has not been overcome.

Accordingly, the court finds as follows:

1. That the merchandise covered by the instant consolidated appeals for reappraisement consists of men's, boys', and infants' cotton wear exported from Japan.

2. That said merchandise was appraised on the basis of export value, as defined in section 402(d) of the Tariff Act of 1930, at the respective invoice unit values net packed.

3. That, as expressed in the invoices, such values were f.o.b. port of exportation.

4. That charges for inland freight from factory to seaport, storage, insurance, and hauling and lighterage are included in said f.o.b. unit prices.

5. That, although the evidence establishes that purchases of the subject merchandise were made ex-factory, there is no evidence to show the prices at which such or similar merchandise was freely offered for sale by such manufacturers, nor is there evidence to establish any other unit price than that returned by the appraiser.

The court, therefore, concludes that—

1. The statutory presumption of correctness attaching to the appraiser's return of values for the merchandise covered by these appeals to reappraisement has not been overcome.

2. The proper basis for appraisement of the merchandise involved herein is export value, as that value is defined in section 402(d) of the Tariff Act of 1930, and that such statutory values are as found by the appraiser.

Judgment will be rendered accordingly.