(Reap. Dec. 9863)

S. S. KRESGE Co. *v.* UNITED STATES

Entry No. 739175, etc.

(Decided December 7, 1960)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

WILSON, Judge: These appeals for reappraisement involve the proper dutiable value of glass, beaded, or paper Christmas decorations and tree ornaments, exported from Japan. Originally, four appeals for reappraisement were involved but, after trial, the importer abandoned reappraisements 220875–A, 221597–A, and 225896–A. Accordingly, there remains for consideration only the dutiable status of the merchandise covered by reappraisement 228105–A.

It appears that the involved merchandise was appraised on the basis of export value, section 402(d) of the Tariff Act of 1930, said appraisement being made at the *per se* unit values, plus various charges for so-called buying commission, inland freight, insurance, storage, hauling, or lighterage. Entry of the merchandise was made under duress pursuant to the provisions of section 503(b) of the Tariff Act of 1930, the amount for the alleged buying commission and the export charges being included in the entered value. Specifically, plaintiff herein contends that the amounts claimed as buying commission and the amounts invoiced as export charges, such as inland freight, etc., are not properly part of the dutiable value of the merchandise involved.

There was received in evidence as plaintiff's collective exhibit 1 an affidavit dated May 22, 1959, executed by K. Tsutsui, manager of the Merchandise Export Department of F. Kanematsu & Co., Ltd., of Kobe, Japan. At the trial, defendant objected to the admission of this affidavit in evidence. However, I deem this affidavit properly admissible and certain statements therein relevant in the determination of the issue herein whether certain export charges and buying commissions are properly a part of the dutiable value of the merchandise. Summarily, the affiant states that his company was employed since 1951 as a buying agent for the plaintiff herein, in which capacity he visited various manufacturers of merchandise and placed orders on behalf of his principals; that he was fully informed and thoroughly familiar with the prices at which manufacturers of merchandise so purchased were offering said merchandise for sale and with all the terms and conditions of sale; that he had purchased merchandise in Japan from various manufacturers and exported same to his principals; that each of the manufacturers freely offered for sale and sold merchandise identical or substantially similar to the merchandise shipped by him to his principals, the offers and sales of the goods being without any restrictions of any nature either as to resale price, disposition, use, or in any other respect; that each and every one of these sales had been at an ex-factory price where delivery was made to the purchaser or his agent at the factory.

The affiant above named further stated that the charges arising after the merchandise left the factory were for the account of and were paid for by the purchaser or his agent; that, in preparing invoices to accompany these shipments, the unit prices paid to the respective manufacturers were increased by a 5 per centum buying commission and charges for placing the order, inspecting the finished merchandise, preparing shipping documents, and arranging for the exportation of the goods; that the purchase price was also increased by the amount of charges actually incurred in bringing the merchan-

dise from the factory to the point of shipment and placing it on board the exporting vessel.

As heretofore indicated, the question here for determination is whether certain so-called export charges for inland freight from factory to seaport, storage, insurance, and hauling and lighterage, and other items claimed as buying commission are properly a part of the value of the merchandise in question. This court and our appellate court have previously passed upon the question of whether inland freight and related charges such as those here involved are to be considered as part of the export value of imported merchandise.

In the case of *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71, an appellate division of this court held that where various items of merchandise were freely offered for sale in Japan for export to the United States at ex-factory or first cost prices, to which were added by the purchaser's buying agent certain so-called export charges, such as inland freight, storage, hauling and lighterage, insurance premiums, and petties, said export charges formed no part of the export value of the subject merchandise. The invoices covering the involved merchandise in the *Brechner* case, *supra*, disclosed five orders from five different manufacturers, the dates of acceptance of said orders, the first cost or ex-factory price per gross, in United States dollars, and the total first cost or ex-factory price, including case and packing charges. Added to said total were certain items listed as "Export Charges"; a commission on the total first cost or ex-factory price; and the consular fee. In its decision, the court, in the *Brechner* case, *supra*, referring to the holding of the trial court therein, at page 723, stated as follows:

It further held, under authority of *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, and *United States* v. *Freedman & Slater, Inc.*, 25 C.C.P.A. (Customs) 112, T.D. 49241, that an appealing party in a reappraisement proceeding may challenge any one or more of the items entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return in respect of all other items, whenever the challenged items do not bring into question the balance of the appraisement. The court construed the instant case as one in which this principle applies, upon the theory that the appraisement was "in effect an appraisement at invoiced 'first cost' or *per se* prices, plus packing, plus the disputed additions for commission and export charges." Accordingly, the court was of opinion that other elements entering into the determination of export value, with respect to said *per se* prices, such as the freely offered price, the principal market, the usual wholesale quantities, and the ordinary course of trade, were not in issue.

With respect to the aforesaid rule, the court, in the *Brechner* case, *supra*, was in agreement with the trial court as to the applicability of the quoted principle to the merchandise there involved. The court, accordingly, held that where an appraiser approves the *per se* invoice unit values, but adds thereto certain so-called export charges in

making his return of value, an appealing party may rely upon the presumption of correctness with respect to the *per se* invoice values together with all of the elements entering into same. In this connection, the court, page 724, stated:

Appellant's essential dispute with the decision of the trial court lies in the underlying proposition that the unit values returned by the appraiser were not separable into first cost and additional charges, but were, in fact, total unit values, not subject to partial attack under the principle of the *Fritzsche* and *Freedman & Slater* cases, *supra*. It is for this reason that appellant urges the necessity of proof, but the lack thereof, of the principal markets in Japan, and the freely offered price to all purchasers.

Especially in view of the method of invoicing the merchandise involved in these cases—the specification of first cost or ex-factory prices, and the addition of total export charges—and appellant's concessions, made on several occasions during both the pretrial hearings and the trial itself, that the only issues in these cases were the principal market and the export charges, the latter being subject to the objection of excessiveness, we deem appellant's position to be untenable.

It seems clear that the *per se* unit values were never in dispute. As invoiced, they were adopted by the importer; as invoiced, they were accepted and approved by the appraiser in his return. It is not to be supposed, because the appraiser also included the export charges in the value which he found, that the *per se* invoice prices were not a separate element.

The defendant, in support of the appraised value, directs attention to the holding of the court in *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627. The question there raised was whether certain inland charges included in the f.o.b. price of imported cotton wear, exported from Japan, were properly to be considered part of the value of such merchandise. In my opinion, the situation in the case at bar is distinguishable from that which obtained in the cited case. In the *Valley Knitting Co.* case, *supra*, it appeared that, when invoicing the goods to the importer, the shipper quoted the f.o.b. Kobe unit prices and thereafter itemized the total export charges for each shipment. The court, in the *Valley Knitting Co.* case, *supra*, in its decision, page 604, stated:

In the different method of invoicing, lies the essential distinction between this and the *Brechner* case, *supra*. There, it will be recalled, each of the invoices showed an ex-factory or first-cost price which, it was held, the appraiser adopted as the *per se* unit price. Because of this method of appraisement, a presumption of correctness attached to those unit prices which obviated the need for proof of ex-factory prices at which the merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country of exportation.

In the instant case, appraisement was made at the invoice unit values net packed. This was an indivisible unit value which presumptively included all charges and was not susceptible of being broken down into components of ex-factory costs, plus export charges, so as to permit the challenging of one or more elements of the appraisement while relying upon the presumption of correctness of the appraiser's return as to any unchallenged items. Accordingly,

it was incumbent upon the plaintiffs, not only to establish that the appraiser's action was erroneous, but to prove affirmatively every material element in the basis of value upon which they rely. *Meadows, Wye & Co. (Inc.) et al.* v. *United States,* 17 C.C.P.A. (Customs) 36, T.D. 43324; *Brooks Paper Company* v. *United States,* 40 C.C.P.A. (Customs) 38, C.A.D. 495.

In the case at bar, the record discloses that the merchandise covered by reappraisement 228105–A in question was invoiced on an ex-factory, packed basis, plus certain so-called export charges and charges for buying commission (R. 2). Such a factual situation parallels that disclosed in the *Brechner* case, *supra*, and warrants the same conclusion here as that in the *Brechner* case, namely, that the export charges in question and the items claimed as buying commission are not part of the value of the involved merchandise.

With respect to the items of "Commissions," said commissions were not incorporated in the *per se* prices, as invoiced. They are separately listed on the relevant invoice covering the goods. In my opinion, the items listed as commissions were not part of the value of the merchandise here involved. The statements of the affiant, Mr. Tsutsui, in plaintiff's collective exhibit 1 relative to the services and negotiations the agent for the American purchaser performed in the purchase and shipment of the involved goods, establish a relationship typical of that rendered by *bona fide* buying agents, no evidence of sufficient probative proof being here shown to establish a relationship between the importer and the agent of a different character. It is further noted that the consular invoice covering the merchandise involved in reappraisement 228105–A contains a sworn declaration by a representative thereof that F. Kanematsu & Co., Ltd., of Kobe, Japan, buying agent for the plaintiff herein, is the shipper of the merchandise and not the seller thereof. It is well-settled law that commissions charged by buying agents do not form part of the value of imported merchandise. *United States* v. *Case & Co., Inc.,* 13 Ct. Cust. Appls. 122, T.D. 40958.

For the reasons above set forth, I find as matters of fact:

1. That the merchandise involved herein consists of glass, beaded, or paper Christmas decorations or ornaments exported from Japan.

2. That at or about the date of exportation of the merchandise in question there were no sales or offers for sale of such or similar merchandise for home consumption in Japan.

3. That the Nagoya, Osaka, Kobe, and Tokyo areas were the principal markets of Japan in which such or similar merchandise was offered for sale for exportation to the United States.

4. That such or similar merchandise was freely offered for sale for exportation to the United States to all purchasers in said principal markets at the *per se* unit value shown on the invoice covering the

merchandise involved in reappraisement 228105–A, net packed, without the charges for inland freight, inland insurance, storage, hauling or lighterage, or buying commission, as separately shown on the pertinent invoice.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise covered by reappraisement 228105–A, and

2. That such values for the involved merchandise are the unit invoice prices "ex-factory" packed. Reappraisements 220875–A, 221597–A, and 225896–A having been abandoned, the same are hereby dismissed.