(A.R.D. 132)

UNITED STATES *v.* GITKIN Co.

Entry No. 15207–1/2, etc.

Second Division, Appellate Term

(Decided June 5, 1961)

*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of the decision and judgment of a single judge sitting in reappraisement (43 Cust. Ct. 508, Reap. Dec. 9524). The merchandise, the subject of this proceeding, consists of bamboo draperies, curtains, blinds, and blind material, exported from Japan during the years 1956 and 1957. Seventy appeals for reappraisement, covering the involved shipments, have been herein consolidated.

It appears from the record, and the individual invoices which are in evidence as plaintiff's collective exhibit 2, that all of the importations were entered at the invoiced ex-factory prices, which prices included packing, but not certain so-called inland charges, separately listed on the respective invoices as (1) inland freight from maker to shipping port, (2) insurance premium from go-down to on board, (3) storages, and (4) hauling and lighterage, nor a stated buying commission of 5 per centum on the total ex-factory price.

The invoices which are here in issue are those only in the name of Nosawa & Co., Ltd., of Kobe, Japan (hereinafter called Nosawa). Such others as bear the names of other Japanese exporters have been

expressly excluded, and the respective appeals for reappraisement have been abandoned as to all merchandise from those firms.

Appraisement of the various items covered by these many suits took two general forms. In certain instances, the appraiser's return was expressed in terms of the invoiced unit values, plus the inland charges, plus 5 per centum, packed. In others, he returned a unit value per 100 square feet, net packed, or per piece, net packed, which was stipulated to "include alleged buying commissions, and inland freight, and other charges in at least the amounts as shown in the invoices in such cases," but, in any event, exceeded the invoiced unit prices.

Both the entered and appraised values are stated to represent export value, as defined in section 402(d) of the Tariff Act of 1930, as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The parties are in apparent agreement that statutory export value is the proper basis for determining the value of the subject merchandise, and the record substantiates that neither such, nor similar, merchandise was offered for sale for home consumption in Japan.

It may fairly be assumed, from all relevant evidence in this case, that the appraiser's return of the value of the individual items of bamboo articles covered by these appeals rested upon an implicit finding that Nosawa was the seller thereof. Appellee vigorously disputes this fact, contending here, as it did before the trial court, that Nosawa was its buying agent who purchased the merchandise in issue for appellee's account from various Japanese manufacturers, some 17 in number. The names of the alleged actual sellers are set forth on the respective invoices to which their sales relate.

To substantiate its contention that Nosawa was its buying agent, appellee, the Gitkin Co., hereinafter called Gitkin, introduced the testimony of its manager, Harold M. Stuart, whose function it is to arrange for the purchase of imported merchandise, and the mechanics of its entry into this country. Stuart gave evidence of an agreement entered into between appellee and Nosawa, on or about August 15, 1955, in Kobe, Japan, a copy of which is in evidence as plaintiff's exhibit 1, whereby Gitkin retained Nosawa as its buying agent to make purchases on its behalf, and pursuant to its instructions,

after submitting samples and price quotations; and to inspect the purchased goods and arrange for its shipment to appellee.

Nosawa was specifically directed to make all purchases on an ex-factory basis, and, in invoicing the purchased material, to set forth such prices, and separately itemize all other charges, including an authorized buying commission of 5 per centum of said ex-factory prices. This agreement remained in effect during the entire period covered by the importations in issue.

Stuart, who was in Japan in August 1955, and on two occasions each in 1957 and 1958, testified that Nosawa performed the duties required of it under the agreement. A representative of Nosawa took him to visit some of the factories which produced the type of merchandise Gitkin was buying, introduced him to their owners, acted as interpreter, and helped him to negotiate purchases. "They arrange the shipping, all of the shipping, and the inspection, market reports, and anything else we needed. In other words, Nosawa is doing the job which I personally would if I lived over there all the time."

The witness further testified that purchases from the manufacturers are paid for in Japanese yen, by Nosawa, whereas Gitkin remits the amount shown on the invoices by letters of credit opened to Nosawa, and payable in United States dollars. He explained the various items specified on the invoices as follows: The charge for export bales and packing included in the ex-factory price covers the cost of packing the material in a tightly bound round bundle, covering it with paper, and sewing it in Hessian cloth or burlap; the item of inland freight is the transportation charge from the seller's factory to the port of Kobe; the insurance premium is for insurance from the time the merchandise is placed in the go-down or warehouse at Kobe until it is put on board the vessel; storage is, as its name implies, warehouse storage charges pending arrival of the vessel; hauling and lighterage are charges for transporting the goods from the warehouse to the exporting vessel, via lighter.

To the best of Stuart's knowledge and information, the amounts charged for the specified items are actual charges.

In two affidavits, introduced into evidence as plaintiff's exhibit 15, and plaintiff's collective exhibit 16, Nosawa's managing director, Kuichi Hitomi, confirmed that at all times here involved his company acted as buying agent for Gitkin, making purchases as directed by the latter, at ex-factory prices, and adding thereto the inland charges actually incurred and its buying commission on the ex-factory prices, as per its agreement. Hitomi stated that Nosawa has no interest in any of the Japanese factories with which it deals. The affidavits further reveal that Nosawa acts in a similar capacity for several other American importers and purchases bamboo blinds for them, as well as for Gitkin, directly from factories on an ex-factory basis.

The record also contains affidavits from some, but not all, of the manufacturers from whom the subject bamboo material was purchased (plaintiff's collective exhibits 3–14, inclusive). While most of the affiants asserted that it was their respective company's sales practice to sell ex-factory or ex-appointed warehouse, as desired by the customer, all of them affirmed that, in the case of Gitkin, all sales were on an ex-factory basis. Attached to some of the affidavits are records of sales showing both ex-factory and ex-warehouse transactions.

The essential facts with respect to Nosawa's status as a buying agent have not been effectively controverted by the two Treasury representatives' reports (defendant's exhibit A, report of Treasury Representative G. K. Yamauchi, dated April 17, 1956, and defendant's exhibit B, report of Treasury Representative Albert J. Francis, Jr., dated October 7, 1958) which constitute appellant's evidence in chief. However reluctantly, both acknowledged that in its relationship to all American importers, except Montgomery Ward, Nosawa acts as a buying agent, entitled to a commission of not more than 5 per centum, and that Nosawa has neither exclusive purchasing rights, nor financial interest in any of the manufacturers whom they had interviewed.

It would seem, therefore, as the trial court has held, that the evidence suffices to establish that Nosawa acted in the capacity of a *bona fide* purchasing agent, whose commissions for services rendered, under settled law, ought not to be included in the value of the instant merchandise. *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T.D. 31007; *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T.D. 32627; *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T.D. 40958.

Moreover, no matter whether the purchases made by Nosawa are construed to be ex-factory or ex-warehouse, it is equally clear that charges accruing subsequent to the point of delivery at Kobe, to wit, insurance, storage, and hauling and lighterage fees, formed no part of the manufacturers' sales prices.

Whether the evidence is, nevertheless, sufficient to support appellee's contention that the ex-factory prices, or, in the alternative, as respects those entries appraised at *per se* unit values, the appraised values, less the *pro rata* inland charges and buying commission, represent the export values of the subject importations is the ultimate question in this case.

Counsel for appellant urges that the established facts are insufficient to overcome the presumptively correct values returned by the appraiser for the reason that appellee has failed to show that its claimed values represent the prices at which the merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade, in the principal markets of the country of exportation. It is further contended that the record lacks

evidence of ex-factory sales in the ordinary course of trade, especially in those cases where manufacturers' affidavits have not been supplied, and in other instances as well, since the manufacturers' averments that ex-factory sales were made have not been properly documented.

Appellee counters that, under the rule of *United States* v. *Fritzsche Bros.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, it may rely upon the presumption of correctness of the appraiser's action for all elements entering into his return of value which have not been challenged. Accordingly, appellee argues that an attack may be made upon the inclusion of the inland charges and buying commissions in the appraised value of the instant merchandise, without the necessity of its being required to prove any other essentials of statutory export value.

A similar question was before this division in the case of *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71, wherein it was held that where ex-factory prices are shown on the invoices, and additional charges are separately stated, and the appraisement preserves the individual identity of the ex-factory prices, and of the charges and commissions, the rule of the *Fritzsche* case, *supra*, is properly applicable. In so holding, we stated:

> Appellant's essential dispute with the decision of the trial court lies in the underlying proposition that the unit values returned by the appraiser were not separable into first cost and additional charges, but were, in fact, total unit values, not subject to partial attack under the principle of the *Fritzsche* and *Freedman & Slater* [25 C.C.P.A. (Customs) 112, T.D. 49241] cases, *supra*. It is for this reason that appellant urges the necessity of proof, but the lack thereof, of the principal markets in Japan, and the freely offered price to all purchasers.

> Especially in view of the method of invoicing the merchandise involved in these cases—the specification of first cost or ex-factory prices, and the addition of total export charges—and appellant's concessions, made on several occasions during both the pretrial hearings and the trial itself, that the only issues in these cases were the principal market and the export charges, the latter being subject to the objection of excessiveness, we deem appellant's position to be untenable.

> It seems clear that the *per se* unit values were never in dispute. As invoiced, they were adopted by the importer; as invoiced, they were accepted and approved by the appraiser in his return. It is not to be supposed, because the appraiser also included the export charges in the value which he found, that the *per se* invoice prices were not a separate element.

> We are in agreement with the trial court that the rule of the *Fritzsche* and *Freedman & Slater* cases, *supra*, as approved in *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 C.C.P.A. (Customs) 243, C.A.D. 558, applies, and that appellees had the right to rely upon the presumption of correctness of the appraiser's return, with all of the findings inherent therein, with respect to all items not specifically challenged in this action.

The writer of this opinion had occasion to review this question in the case of *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627. There, it appeared that the invoices

did not separately show ex-factory prices and extra charges, but, on the contrary, set forth f.o.b. port of exportation unit prices, which included all charges theretofore accruing. Since the appraisement was made at the invoice unit values, net packed, it was held that it was not divisible or "susceptible of being broken down into components of ex-factory costs, plus export charges, so as to permit the challenging of one or more elements of the appraisement while relying upon the presumption of correctness of the appraiser's return as to any unchallenged item. Accordingly, it was incumbent upon plaintiffs, not only to establish that the appraiser's action was erroneous, but to prove affirmatively every material element in the basis of value upon which they rely. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C.C.P.A. (Customs) 36, T.D. 43324; *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495."

The method of invoicing in the instant case parallels that which was employed in the *Brechner* case, *supra*, and, clearly, wherever the appraisement was expressed in terms of invoice unit values, plus inland charges, plus commission, it may be attacked in part only, within the *Fritzsche* rule, while the presumption of correctness serves to sustain all unchallenged elements.

We are of opinion, moreover, that the stipulation of the parties to the effect that the unit value appraisements "include alleged buying commissions, and inland freight, and other charges in at least the amounts as shown in the invoices in such cases," coupled with appellee's acceptance of any resultant advance in the *per se* unit prices, constituted a constructive separation of the elements of the appraisement which permitted appellee to limit its proof to the matter of the disputed charges.

As we have observed, *supra*, the law is well settled that *bona fide* buying commissions form no part of the value of imported merchandise. Since the *bona fides* of Nosawa's role as Gitkin's buying agent is amply supported by the record in this case, we sustain the trial court's finding that its commissions, as invoiced, are properly excluded from the value of the instant merchandise.

The law is equally well settled that where merchandise is freely offered for sale on an ex-factory basis, if the factory be the principal market, charges for freight and other services, subsequently accruing, are not elements in the export value of such merchandise. *United States* v. *Lyons*, 13 Ct. Cust. Appls. 639, T.D. 41484; *United States* v. *Paul A. Straub & Co.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553; *Albert Mattola, etc.* v. *United States*, 46 C.C.P.A. (Customs) 17, C.A.D. 689; *United States* v. *Dan Brechner et al.*, *supra*. This is not to say that occasional or sporadic ex-factory sales, not in the ordinary course of trade, suffice to determine the matter, if it is customary and usual for the seller's price to include such charges. What is to be

considered is how the merchandise is ordinarily sold in the principal market of the country of exportation. If it were made to appear, in the instant case, that only sales to Gitkin were ex-factory sales, but that all other purchases were ex-warehouse, port of exportation, or f.o.b. port of exportation, the position taken by appellant might be well founded. But we are of the opinion that the evidence as a whole points to the contrary.

Nosawa's managing director, Hitomi, stated in his affidavit, plaintiff's collective exhibit 16, that his company is the Japanese purchasing agent for several American importers, for whom it purchases Japanese merchandise directly from the factories on an ex-factory basis. Among the 17 American firms listed by him are 6, to wit, A. & P. Import Co., Gitkin Co., Hurricane Import Co., Shelford, Inc., Unitron Import Corp., and Lindsley Import & Export Co., for whom Nosawa purchases bamboo blinds.

Several of the sellers of this type of merchandise also stated, under oath, that they sold their bamboo blinds, ex-factory or ex-named warehouse, as requested by the customer.

Apparently, therefore, Nosawa experienced no difficulty in making ex-factory purchases pursuant to the terms of its agreement with Gitkin; and, indeed, was able to do so in the case of its other American principals. Moreover, the market for bamboo blinds and blind material is shown by this record to be a competitive one, wherein all manufacturers conducted their business along more or less similar lines. Consequently, the fact that some of the manufacturers regularly sold ex-factory would warrant the conclusion that, in the ordinary course of trade, merchandise of this type was freely available to all purchasers on an ex-factory basis. And since sales were made at the factories, the sites thereof may properly be considered the principal markets. *United States* v. *T. E. Ash (American Askania Corp.)*; *Freedman & Slater*, 22 C.C.P.A. (Customs) 395, T.D. 47401; *M. V. Jenkins et al.* v. *United States*, 34 C.C.P.A. (Customs) 33, C.A.D. 341. Therefore, charges accruing after the goods left the respective factories are not part of the export value of such or similar merchandise, as the trial court quite properly held.

Based upon the foregoing considerations, the court makes the following findings of fact:

1. The merchandise covered by the instant consolidated appeals for reappraisement consists of bamboo curtains, drapes, blinds, and material for making said articles.

2. The said merchandise was exported from Japan at various times during the course of the years 1956 and 1957.

3. That said merchandise was entered on the basis of the invoiced ex-factory prices, packing included, but exclusive of a buying commission and certain inland charges for freight, insurance, storage,

hauling, and lighterage, which charges were separately itemized on said invoices.

4. That the merchandise in issue was appraised either at the invoiced unit values, plus charges, plus buying commission; or at *per se* unit prices, net packed, which latter method of appraisement has been stipulated to "include alleged buying commissions, and inland freight and other charges in at least the amounts as shown in the invoices in such cases."

5. That the instant consolidated appeals for reappraisement have been limited in application to such merchandise only as was shipped by Nosawa & Co., Ltd., of Kobe, Japan, and, as to all other merchandise shipped by all other sellers and/or shippers, said appeals for reappraisement have been abandoned.

6. That, at all times pertinent hereto, said Nosawa & Co., Ltd., was the buying agent for the Gitkin Co. and various other American importers of such or similar merchandise, and that, in the case of the Gitkin Co., was entitled to a buying commission of 5 per centum of the invoiced ex-factory prices.

7. That, at all times pertinent hereto, all Japanese manufacturers of bamboo blind articles freely offered their products for sale for exportation to the United States at ex-factory prices or ex-named warehouse in Japan, packing included, depending upon their customers' preferences.

8. That, at and prior to the respective dates of exportation of the merchandise here involved, the factories of the sellers were the principal markets for the purchase of such or similar materials.

9. That neither such nor similar merchandise was offered for sale for home consumption in Japan.

10. That charges accruing after the goods left their respective factories are not part of the statutory export value of such or similar merchandise.

11. That the export value of the merchandise covered by these appeals for reappraisement is, in the instances where appraisement was made at ex-factory prices, plus inland charges, plus 5 per centum, the invoiced ex-factory prices, packing included; and, in the instances of appraisement at unit values, net packed, at said unit values, less the amounts included therein for inland freight, insurance, storage, hauling and lighterage, and commissions.

The court, therefore, makes the following conclusions of law:

1. That export value, as defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise covered by the appeals for reappraisement, enumerated in the schedule of cases hereto attached and made a part hereof, in which the invoices are from Nosawa & Co., Ltd., of Kobe, Japan.

2. That such values are as set forth in finding of fact No. 11, *supra*.

3. That the appeals for reappraisement, enumerated in said schedule, insofar as they relate to merchandise other than that which is invoiced by Nosawa & Co., Ltd., of Kobe, Japan, having been abandoned, are excluded from the scope of this application for review and the judgment herein rendered.

4. That the judgment of the trial court be, and the same hereby is, affirmed.