(Reap. Dec. 10830)

HADDAD & SONS, INC. *v.* UNITED STATES

Entry Nos. 48211; 41259; 6280.

(Decided September 28, 1964)

*James G. McGoldrick* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

RAO, Judge: Plaintiff, an importer of cotton hooked rugs, herein appeals for reappraisement of three shipments of said merchandise, exported from Japan on March 21, 1959, April 29, 1959, and July 13, 1959, and the appeals, listed as R59/13079, R59/13077, and R60/1468, respectively, have been consolidated for purposes of trial. The merchandise in each of the three cases was entered at the invoiced unit value, plus packing, and, when used, labels, but is, in each instance, claimed to be valued at $0.165 per square foot, plus cost of packing and labeling as invoiced.

Appraisement was made at $0.17 per square foot, net packed, in R59/13079 and R59/13077, and at $0.185 per square foot, net packed, in R60/1468, which values, counsel for the Government has advised the court, were "based on MITI values." [1]

The parties are agreed that export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs

---

[1] Although not further identified in the record than as an "official list put out by the Japanese Committee," apparently counsel was referring to values approved by the Japanese Ministry of International Trade and Industry.

Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise in issue. This section reads as follows:

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The record in this case consists of the testimony of Mr. Moysh Haddad, president or secretary-treasurer of the plaintiff corporation, hereinafter referred to as Haddad, an affidavit of one Yasuo Namekawa, president of The Tosho Co., Ltd., of Tokyo, Japan, hereinafter called Tosho (plaintiff's exhibit 1), two affidavits of Takaichi Ohta, president of Daido Shikimono Kogyo Sho, hereinafter called Daido, manufacturer of some of the subject merchandise (plaintiff's exhibits 2 and 3), and a document described as "Sale Note No. OSA–1935" (plaintiff's exhibit 4), all of which evidence was introduced on behalf of plaintiff.

It appears from this record that plaintiff is an importer of a variety of Japanese cotton goods and that the witness, Mr. Moysh Haddad, has been the company's Japanese buyer for many years. He makes frequent trips to Japan for the purpose of canvassing the various markets and selecting the merchandise his firm eventually purchases. To assist in these endeavors, he, in behalf of his company, has engaged the services of Tosho to accompany him while he is buying; act as his interpreter; make memoranda of sales; and handle the shipment and the finances to assure that the merchandise is properly delivered to the plaintiff; and these services were performed in connection with the purchase of the merchandise at bar. Mr. Haddad personally makes the initial selection of the merchandise he wishes to buy and agrees to prices and terms, and it is the responsibility of Tosho to see that all arrangements for shipping the goods to plaintiff are properly completed.

On January 16, 1959, Mr. Haddad placed an order with Ohta Shikimono Kogyo Sho of Osaka, Japan, hereinafter called Ohta, for a quantity of cotton hooked rugs, at an agreed price of 15 cents per square foot, plus packing. This is the merchandise which was shipped on March 21, 1959. When he subsequently sought to order an additional quantity, the price was increased to 16½ cents per square foot. He also purchased identical rugs from Daido, a firm which he said was associated with Ohta, for 16½ cents per square foot, plus packing and labeling.

A representative of Tosho accompanied Mr. Haddad at the time of the original purchase which was made at the seller's place of busi-

ness in Sakai, and, according to the witness, took care of the transaction from there on. Sales were made without any restrictions upon the purchaser's right to dispose of the merchandise, and the initial sale was consummated after the witness had visited various other manufacturers of cotton hooked rugs in the vicinity of Sakai. He bought the rugs in issue, though they were a penny per square foot more than those of another seller, because the patterns were good, and deliveries were prompt. All purchases were ex-factory, and none of the charges listed on the invoices for inland freight, storage, insurance, hauling and lighterage, and buying commission were, to his knowledge, paid to the sellers.

On cross-examination, the witness admitted that he did not know whether or not either of the two involved manufacturers sold such or similar merchandise to other purchasers; or the prices at which they offered similar merchandise for exportation to the United States. He stated that he was advised by both the manufacturer and Tosho that rugs of the size here involved were not on the so-called MITI list, but he had no copy of such list nor personal information to that effect.

For the most part, plaintiff's exhibit 1, the affidavit of Yasuo Namekawa, corroborates the testimony of Mr. Haddad with respect to the services performed by Tosho in connection with plaintiff's purchases of Japanese merchandise and in particular the cotton hooked rugs at bar. The affidavit further recites that affiant had personal familiarity with the Japanese markets for goods such as are here involved and that—

* * * the prices and terms of the manufacturer [or seller] are the prices and terms at which the manufacturer [or seller] is offering to all purchasers who come to him to buy for export to the United States. I can make this statement because I can compare the knowledge I obtain when Mr. Haddad makes purchases from such manufacturers [or sellers] with the knowledge which I obtain when I go in the same market to the same manufacturer [or seller] or to other Japanese manufacturers [or sellers] of similar goods and merchandise for export to the United States and I personally make purchases as a fully authorized buying agent for other United States principals, not including Haddad & Sons, Inc. or customers from other nations, or, I make purchases for the account of The Tosho Co., Ltd. to re-sell as a dealer to others than Haddad & Sons, Inc. for export to the United States.

At this juncture, it is appropriate to observe that counsel for the Government urges upon the court the rejection of all proof of the relationship between Tosho and Haddad for the reason that plaintiff's exhibit 1 adverts to a written agreement between the parties on that subject which has not been introduced into evidence.

It is, of course, generally true, that a written document is itself the best evidence of what it purports to recite, and that parol evidence is not admissible to vary its terms and conditions. Consequently, whether the parties to an agreement have carried out the

provisions of the writing and have acted in accordance with its strictures are matters embraced within the scope and effect of the best evidence rule and may not be proven by secondary evidence. Corpus Juris Secundum, volume 32–A, sections 851, 910. But there is no limitation upon the competency of a witness to attest to his personal performance and experience with respect to material facts, and, while his actions may not be measured against the writing for the purpose of determining whether he has conformed thereto, they may give rise to legal consequences dehors the agreement having a bearing upon the issues to be determined.

So, in the instant case, the testimony of the witness Haddad, and the statement of the affiant Namekawa are competent to establish what steps were in fact taken in connection with the shipments here involved and to show the *de facto* relationship existing between the parties for those particular transactions.

For whatever bearing it may have in the premises, the court finds that Tosho acted as Haddad's buying agent for the subject purchases and that the commission charged for its services is not a part of the value of the instant merchandise. *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T.D. 40958; *United States* v. *Nelson Bead Co.*, 42 CCPA 175, C.A.D. 590.

The affidavits of Takaichi Ohta discuss the business activities and sales practices of Daido, the seller of the merchandise in R60/1468. This affiant therein stated that his company sold or was willing to sell cotton hooked rugs, 19 inches by 29 inches, to all purchasers, for exportation to the United States, at ex-factory unit prices, plus packing and labeling, and without quantity discounts or restrictions on the buyer's use of the merchandise, although the only sale actually shown was the one to plaintiff at $0.165 per square foot, ex-factory, plus packing charges, for delivery to Tosho after inspection and acceptance at the factory. With respect to other sales which the affiant said his company made regularly in 1959, at ex-factory prices, he stated, "Daido Shikimono Kogyo-sho does not have the need or the place to keep old sales documents, so it is I cannot attach same to this statement." Moreover, whereas in plaintiff's exhibit 2, this affiant stated that his company sold to all purchasers, he modified that statement in his second affidavit wherein he noted that sales were made to "any satisfactory accredited buyer," "any accredited purchaser * * * where purchaser negotiates the sale with him personally and the purchaser agrees to inspect and remove the goods from our factory."

No evidence as to the sales practices of the firm of Ohta was offered. However, there is some testimony of record tending to show that Ohta and Daida were related companies and that the cotton hooked rugs made by both concerns were the same.

In contending that $0.165 per square foot, ex-factory, Osaka, Japan, plus cost of packing and labeling, as invoiced, is the statutory export value of the cotton hooked rugs here involved, counsel for plaintiff relies on the principles expressed in the case of *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145, as follows:

The framework of legal principles within which the disposition of this case must be confined has been developed in a series of cases generally involving the issue of whether or not inland freight and other shipping charges form part of the export value of imported merchandise. An extensive review of this proposition in the cases of *United States* v. *Paul A. Straub & Co.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553, and *Albert Mottola, etc.* v. *United States*, 46 C.C.P.A. (Customs) 17, C.A.D. 689, led to the conclusion that where merchandise is offered for sale and sold on an f.o.b. port of exportation basis, and is never sold or offered for sale at ex-factory prices, the inland charges incurred in transporting merchandise from the factory to the f.o.b. point form an integral part of the value of such merchandise. Where, however, ex-factory sales are shown, and it is established that such or similar merchandise is freely offered for sale to all purchasers, in the usual wholesale quantities and in the ordinary course of trade, at ex-factory prices, freight and other charges subsequently accruing are not elements entering into the determination of export value. *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132.

The two approaches to the consideration of the question of whether or not the described charges should be included in the finding of statutory export value are, by now, well-recognized procedures, it being generally understood that charges accruing subsequent to the time merchandise leaves the principal market are not ordinarily a part of the value of such goods in such market, but become so only if the merchandise is not freely sold or offered for sale at prices which do not embrace them. *United States* v. *Paul A. Straub & Co.*, supra; *Albert Mottola, etc.* v. *United States*, supra; *United States* v. *Gitkin Co.*, supra. But the determination of when one rule rather than the other is to be applied to a given importation depends upon the situation which obtains in the market from which the goods are exported. And this is a question of proof, which, in view of the provisions of 28 U.S.C., section 2633, must be offered by the party challenging the presumptively correct value found by the appraiser, who must establish not only wherein the appraiser has erred, but as well what the proper value is. In this endeavor it is incumbent upon such party to meet every material issue in the case. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. That is to say, in proving an export value different from that found by the appraiser, a plaintiff must show the price at which such or similar merchandise is freely sold or offered for sale, in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade.

As this court had occasion to observe in *United States* v. *Supreme Merchandise Company*, supra, instances may arise where the burden

assumed by a plaintiff in a reappraisement action may be somewhat less onerous, and the offering of proof of some material facts may be dispensed with. We there stated:

> Moreover, the extent to which ex-factory sales need be proven depends upon the method employed to invoice the goods, and the way in which the appraiser makes his return of value. If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71; *United States* v. *Gitkin Co., supra; Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627. Under the rule expressed in *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. *United States* v. *Dan Brechner et al., supra.*

The present case is not one in which the appraisement is separable, so it cannot be said that plaintiff was relieved of any part of the burden of proof which it assumed in challenging the appraiser's action, under the principles hereinabove stated. It is quite clear that the values returned by the appraiser were expressed as unit totals, with no permissible inference either that ex-factory prices were approved or that such totals related in any part whatever to inland charges or buying commission. If there be any indication in the instant record of the appraiser's intention in returning the particular values that he found, it is contained in the statement of counsel for the defendant that "appraisement was based on MITI values."

Accordingly, the question here as in all appeals for reappraisement is whether the plaintiff has established that the appraiser's action was incorrect and what the proper export value was. If there is evidence to satisfy the statutory definition of export value in the light of the statutory explanation of the meaning of certain of its expressions as hereinbelow quoted,[2] which shows an export value other than that

---

[2] Section 402 (f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise, without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing

found by the appraiser, then plaintiff is entitled to prevail in this action.

Considering first the affidavits of Takaichi Ohta, plaintiff's exhibits 2 and 3, it appears that Daido sold cotton hooked rugs, sizes 19 inches by 29 inches to all accredited purchasers, satisfactory to the company, at a price of $0.165 per square foot, ex-factory, plus packing and labeling charges; that it allowed no discounts for quantity; that it imposed no restrictions on the buyers' use of the merchandise; and that Osaka, Japan, was one of the principal places in Japan for the sale of such merchandise.

Counsel for the Government urges under authority of *M. Hashimoto et al.* v. *United States*, 69 Treas. Dec. 1431, Reap. Dec. 3818, that the contents of these affidavits ought not to be considered as they contain conclusions, not facts, and are not accompanied by other evidence of sales.

But the question which was involved in the *Hashimoto* case, as well as in the oft-mentioned case of *Brooks Paper Company* v. *United States, supra,* was whether or not the record contained proof of the usual wholesale quantity, and the courts have held that in such instance evidentiary facts in the form of records of sales and pricelists must accompany the affidavit to the end that that wholesale quantity in which the major portion of sales were made may be determined. Where, however, the price does not vary with the quantity sold, no issue of usual wholesale quantity is raised, *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093; section 402(f)(5), *supra*, and seemingly, independent evidence of sales need not be offered. When a witness states, "I sold cotton hooked rugs to all purchasers at a price of $0.165 per square foot, without regard to the quantity purchased,"

appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

\* \* \* \* \* \* \*

(5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

he has stated a fact, not a conclusion, and his statement needs no corroboration.

If it be urged that the affiant's statements that he sells only to "satisfactory accredited buyer[s]," is an indication of a refusal to sell to all purchasers at wholesale, it must be answered that the statute no longer makes sales to all purchasers a material element in the definition of export value. Sales to one or more selected purchasers are acceptable indications that the merchandise is freely sold or offered for sale, if such sales are in the ordinary course of trade, at a price which fairly reflects the market value of the merchandise.

This court is of opinion that this seller's statement that he sold to all accredited buyers at the stated unit price, coupled with the testimony of the witness for the plaintiff and the affidavit of the president of Tosho, suffices to establish that such merchandise, that is the merchandise sold by Daido, was freely sold to one or more selected purchasers at a price which fairly reflects the market value thereof, without allowance for quantity and without restrictions as to use, and that such price was $0.165 per square foot, plus packing, and, where used, labels.

This conclusion does not hold true for the merchandise sold by Ohta, however, since the evidence is insufficient to show the manner in which that company sold the cotton hooked rugs that it manufactured. The fact that there was a relationship between the two manufacturers of the merchandise at bar does not suffice to establish that Ohta's sales were made on the same basis as Daido's, at ex-factory prices without restrictions or quantity discounts.

Although export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, *supra*, may be derived from sales of such or similar merchandise, the definitions, *supra*, in section 402(f), of the term "such or similar merchandise" relate first to merchandise identical to that undergoing appraisement and produced in the country of exportation by the same person. Merchandise possessing identical physical characteristics, but produced by another person may not be considered to be "such" merchandise unless sales by the same manufacturer as that of the merchandise undergoing appraisement do not establish export value. In this instance, it cannot be satisfactorily determined whether category A merchandise meets the statutory test for export value, for there is no evidence as to how Ohta sold its products, and sales of category B merchandise cannot be considered until sales of category A merchandise have been ruled out.

As to the merchandise involved in reappraisements R59/13077 and R59/13079, the court is constrained to hold that the evidence is insufficient to rebut the presumptively correct values found by the appraiser.

The court makes the following findings of fact:

1. The merchandise covered by these consolidated appeals for reappraisement consists of cotton hooked rugs, sizes 19 inches by 29 inches, exported from Japan on March 21, 1959, April 29, 1959, and July 13, 1959.

2. The merchandise covered by appeals R59/13079 and R59/13077 was manufactured by the firm of Ohta Shikimono Kogyo Sho and sold to plaintiff at the agreed prices of 15 cents per square foot, plus packing, and 16½ cents per square foot, plus packing, respectively.

3. The merchandise covered by appeal R60/1468 was manufactured by the firm of Daido Shikimono Kogyo Sho and sold to plaintiff at the agreed price of 16½ cents per square foot, plus packing.

4. All of the merchandise in R59/13079 and R59/13077 was appraised at $0.17 per square foot, net packed, and in R60/1468 at $0.185 per square foot, net packed, on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

5. It is the claim of the plaintiff that the proper export value of said merchandise is $0.165 per square foot, ex-factory, plus cost of packing and labeling as invoiced.

6. The firm of Daido Shikimono Kogyo Sho freely sold or offered such merchandise for sale to one or more selected purchasers at the price of $0.165 per square foot, ex-factory, plus packing, and, where used, labeling, without quantity discounts or restrictions as to the buyer's use of such merchandise.

7. The record is sufficient to show that Daido's price was one which fairly reflected the market value of the merchandise.

8. The record is barren of evidence to show the manner in which Ohta sold the cotton hooked rugs produced by it.

9. Osaka was one of the principal markets in Japan at or about the dates of exportation of the merchandise here involved.

10. Plaintiff's purchases of cotton hooked rugs in Japan were made with the assistance of The Tosho Co., Ltd., its buying agent.

11. The presumption of correctness of the appraiser's finding of values for the merchandise covered by R59/13079 and R59/13077 has not been overcome.

The court, therefore, concludes:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise covered by these consolidated appeals for reappraisement.

2. That such value was $0.165 per square foot, plus packing and labeling, in R60/1468.

3. That in the cases of R59/13079 and R59/13077, the values were as returned by the appraiser.

Judgment will be entered accordingly.