UNITED STATES *v.* VAN INGEN & Co. *et al.* (No. 1327).[1]

SHRINKAGE AS A CHARGE OR EXPENSE—SUBSECTION 18 OF SECTION 28, TARIFF ACT
OF 1909.

The importer of these woolens incurred certain costs for their inspection and
damping in London and the collector added these costs to the entered value. In
this he exceeded his authority. These costs so incurred are not charges and expenses
incident to placing the merchandise in condition packed ready for shipment to the
United States, as provided for in subsection 18 of section 28, tariff act of 1909.—
United States *v.* Spingarn (5 Ct. Cust. Appls. 2; T. D. 34002), distinguished.

United States Court of Customs Appeals, November 27, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34066 (T. D. 33872.

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of
counsel; *Samuel Isenschmid,* assistant attorney, on the brief), for the United States.
*Allan R. Brown* and *Gerry & Wakefield* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
The importers are engaged in the business of importing English and
Scotch woolens for men's clothes. They maintain a warehouse in
London. Their course of business is to purchase goods at various
points in Great Britain. Those in question in this case were pur-
chased at Huddersfield. The goods are shipped to the London office
of the importers in bales. The practice prevails by the present
importers to send these bales of goods out of their office to concerns
called dampers and examiners. These dampers or examiners send
their own vans for the goods, and after treatment return them to the
warehouse of the importer in the same form in which they were
received, except as defects, if any, in the goods are shown, as herein-

---

after stated. The process pursued by these dampers or inspectors is to unroll the goods, place them over perches, and make a thorough examination to ascertain if there are any defects in the cloth in width, color, or general appearance. If any such are found, the defect is marked on the edge of the selvage with a string. The unrolling and suspending of these goods over perches having resulted in giving them a rough appearance, they are then dampened and pressed into the form in which they came originally from the manufacturer, and returned to the importer's office. The expense of this treatment amounts to about a penny a yard.

The goods in question were imported and invoiced at the price paid by the importer, and a notation was made of the expense of inspection and damping, which item was deducted from the total by the importer. The local appraiser made an addition to cover the cost of shrinkage, inspection, and damping, and from this decision an appeal to reappraisement was taken, and the general appraiser made an order "entered value sustained." The collector, however, assessed duty, not only upon the value as entered, to wit, the original cost to the importer, but added the item paid for shrinkage, so called, as a cost charge and expense under subsection 18 of section 28 of the tariff act of 1909. The importer filed his protest to this action of the collector, and on hearing the protest was sustained. The Government has brought this appeal, and the question presented is whether the item for treatment of the cloth, as above stated, is subject to assessment by the collector as an item of cost, charge, or expense under subsection 18.

Subsection 18 provides:

* * * The duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, * * *.

The question presented naturally divides itself. It is, first, a question whether the item for the service in question is dutiable at all, or whether it is to be treated as a charge kindred to that of a commission paid by the importer for ascertaining the condition and character of the goods as preliminary to the final acceptance of the same; and, secondly, whether if it be dutiable at all it be not a part of the value of the goods at the time of exportation. The section above quoted provides that the value at the time of exportation to the

United States in the principal markets of the country from whence exported is to be the controlling value.

The Board of General Appraisers in deciding the case rested its decision upon an opinion previously filed in T. D. 33882, in which it was held that the charge in question was not a charge to be ascertained by the collector, but if a charge dutiable at all, it was an item which should have been added to the *per se* value of the goods.

The case of United States *v*. Spingarn (5 Ct. Cust. Appls., 2; T. D. 34002) is relied upon by the Government as sustaining the power of the collector to proceed by ascertainment to determine the amount of these charges and to impose duty thereon. But we agree with the Board of General Appraisers in the case cited that under subsection 18 it is the duty of the collector to assess duty upon the actual market value or wholesale price at the time of exportation to the United States. The expense in question having been incurred prior to the date at which the market value is to be found by the appraiser, the item, if dutiable, must be deemed to have entered into the cost of the merchandise to the importer, and it is to be presumed that it entered into consideration of the general appraiser in determining its market value. London is shown by the evidence to be the market for such merchandise, and it is further shown that merchandise which has been shrunk and inspected is the subject of sale in the London market. The expression "other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States," must be construed in connection with what precedes it, which relates to the value of cartons, cases, boxes, etc., and it must be held that the charges and expenses spoken of generally were the charges and expenses of the same general kind and character as those specifically enumerated. Those here in question were not of this character. They related to the inspection of the goods, which might have preceded the receipt of them into the warehouse of the importers, and in the case of some importers did precede such receipt. But the charges had nothing whatever to do with the exportation from London to the United States or with putting the merchandise in condition for shipment. They were not charges and expenses *incident* to placing the merchandise in condition packed ready for shipment to the United States. The same treatment would have been necessary had the importer seen fit to sell these goods in the local market or for exportation to other countries than the United States.

The case is of course clearly distinguishable from that of United States *v*. Spingarn, in that there the cost in question was one, strictly speaking, for the purpose of placing the goods in condition ready for shipment.

Reaching the conclusion, as we do, that the Board of General Appraisers was right in holding that in no view was this charge or

cost a charge or cost within the meaning of these words used in subsection 18, it becomes unnecessary to discuss the other question as to whether this item would be a dutiable item under any circumstances if included as a part of the actual market value of the goods at the time of exportation. For there being no authority of the collector to proceed to ascertain these costs, charges, and expenses, the action of the appraiser must be held final as to the value of the merchandise and the collector must be held to have exceeded his authority.

The decision of the board is *affirmed*.