(Reap. Dec. 10032)

W. J. BYRNES & CO. OF N.Y., INC. v. UNITED STATES

Entry No. 746980.

(Decided June 19, 1961)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

OLIVER, Chief Judge: This appeal for reappraisement covers a shipment of cigarette lighters, exported from Japan on or about July 30, 1957, and entered at the port of New York.

There appears to be no dispute that the proper basis for appraisement of the present merchandise is export value, as defined in section 402 (d) of the Tariff Act of 1930. The issue herein relates to certain charges marked by the appraiser in red ink with the letter "X" and identified on the invoice in question as follows:

Buying Commission
Inland Freight
Storage
Insurance Prem. from godown to onboard
Hauling & Lighterage
Petties (Financing, etc.)

Plaintiff claims that the above-enumerated items are not part of the dutiable value of the cigarette lighters in question and that the statutory export value of these articles is the invoice ex-factory prices, plus "Case & Packing Charges," as invoiced. In alleging that such values represent the export value of the present merchandise, plaintiff contends that the item, described as "Buying Commission," is a *bona fide* buying commission and that the other items in dispute, hereinafter referred to as inland charges, were, as stated in counsel's brief, "incurred after the merchandise had left the principal market, and (although adding to the cost of the goods to the importer) form no part of the dutiable value." The limited issue brings into application the well-established principle that when, as here, only certain items of an appraisement are challenged, the presumption of correctness as to all others is not destroyed, and, therefore, they stand as presumptively correct. *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371. The discussion herein is limited accordingly.

Plaintiff introduced oral testimony of a partner of the Panation Trade Co., the importer of the present merchandise. His testimony supports the following summation.

The cigarette lighters in question were manufactured by the Kajita Light Corp., located in the Daito-ku area of Tokyo, Japan. They were manufactured pursuant to an order, and at prices negotiated by the witness, personally, during one of his frequent business trips to Japan. Prices for these cigarette lighters were based on delivery of the merchandise at the manufacturer's door; thereafter, all responsibility for the exportation of the goods was vested in the American importer. Because of language difficulties and inadequate facilities of the foreign manufacturer, the witness found it necessary to employ the services of the Hasegawa Manufacturing Co. as an agent in connection with the purchase of this merchandise. The Hase-

gawa Manufacturing Co. inspected and packed the cigarette lighters, prepared all necessary documents for the proper exportation of the merchandise, and performed other services associated with the purchase of the goods. For such work, Hasegawa received a commission. Concerning payment to Hasegawa, the witness testified as follows (R. 9–10):

Q. Did you make any arrangements with Hasegawa to compensate him for his services?—A. Yes, sir, naturally, especially since the volume became rather large, larger than Mr. Hasegawa's own particular volume of outgoing export merchandise, he naturally had to be properly compensated.

Q. What arrangements did you make with him?—A. I tried to treat him and pay him fairly, which would be treating him as any buying agent would be, and I put him on that basis. I asked him if he liked to do it, and being a good customer, he said he would.

Q. What agreement did you make with him, to pay him how much?—A. Five per cent commission.

Q. Of what?—A. Of our ex-factory price that I had negotiated with Mr. Kajita, plus any other charges that he had for preparing, for doing the work that we had discussed.

The inland charges in controversy related to expenses incurred for getting the merchandise from the factory of the manufacturer and being placed on board the vessel for shipment to the American importer. Such charges, while varying in amounts among different agents, are incurred in the normal procedure followed by buying agents in transactions like the one involved herein.

On cross-examination, the witness was questioned about certain invoices, including the one involved herein, and other documents, particularly confirmations of orders (defendant's exhibits A and B), wherein Hasegawa appears as the seller or shipper or consignor, and which also show, as the manufacturer of the cigarette lighters, a Japanese firm other than the Kajita Light Corp. Any doubt concerning the actual parties to the transactions covered by the invoices and other documents, identified by Government counsel, was removed through positive testimony of the witness, who stated that, in every instance, the Kajita Light Corp. was the manufacturer and Hasegawa was the buying agent, employed to perform the services, heretofore mentioned. It is well settled that statements on consular invoices are not controlling when, as here, satisfactory evidence is presented showing the statements to be erroneous. *United States* v. *Rotberg & Krieger*, 24 C.C.P.A. (Customs) 441, T.D. 48902; *United States* v. *Paul Puttman*, 21 C.C.P.A. (Customs) 135, T.D. 46466.

Referring to the letter of credit (plaintiff's exhibit 2), issued by the American importer in favor of Hasegawa, the witness testified that it provides for payment of the cigarette lighters, *per se*, and also includes the buying agent's commission and the inland charges and that the aggregate amount thereof, in the sum of $9,000, was

not necessarily limited to the particular shipment under consideration, since it was the practice of the Panation Trade Co. to "send letters of credit on a continuing basis." (R. 38.)

Plaintiff's oral testimony is corroborated in an affidavit (plaintiff's exhibit 1) executed by an employee of Hasegawa at the time of exportation of the merchandise in question. Explaining the services performed by Hasegawa on behalf of the importer in connection with the exportation of the cigarette lighters in question, the affiant testified as follows:

* * * We acted as buying agents only handling the purchases which Mr. Roberts for Panation Trade Company had made directly with the actual manufacturers of the cigarette lighters. We acted only as buying agents for Panation Trade Company, doing documentation and inspection for them and our commission then earned was a buying commission. I personally was working for Hasegawa KK all during this period and in fact I personally did most of the documentation and inspection work.

The record herein, as hereinabove outlined, is sufficient to establish that the cigarette lighters involved herein were sold at ex-factory prices, which did not include the inland charges, and that plaintiff bought the present merchandise through a buying agent, who received a commission for his services that were associated with the purchase of these cigarette lighters. With such a factual condition, there is ample judicial authority to support plaintiff's contention that the items in question are nondutiable and, consequently, not part of export value.

Judicial authorities are consistent to the effect that a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which, although affecting the cost of goods to the importer, is not part of the market value of the merchandise. *Paramount Import Co., Inc., et al.* v. *United States*, 40 Cust. Ct. 672, Reap. Dec. 9061, affirmed in *Same* v. *Same*, 44 Cust. Ct. 702, Reap. Dec. 9697. Under the cited case, the item in controversy, identified on the invoice as "Buying Commission," is a *bona fide* buying commission and, hence, is a nondutiable item.

With respect to the other items in question, referred to herein as inland charges, the record before me shows that the said charges were not part of the price at which the merchandise was freely offered for sale to all purchasers by the manufacturers thereof and that there existed in the foreign market the usual trade practice to offer for sale, and to sell, cigarette lighters, such as or similar to the merchandise in question, on an ex-factory basis, with the American importer, or his Japanese agent, having the responsibility from that point to effectuate exportation from Japan. Under such circumstances, the inland charges are not part of statutory export value. *Gitkin Co.* v. *United States*, 43 Cust. Ct. 508, Reap. Dec. 9524, affirmed in *United*

*States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132; *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71.

On the basis of the record before me, and for all of the reasons hereinabove set forth, I find as facts:

(1) That the merchandise in question consists of cigarette lighters, exported from Japan on or about July 30, 1957.

(2) That, at the time of exportation of the present merchandise, plaintiff employed a buying agent in the foreign market for the purchase of cigarette lighters, such as those in question, that the services performed by such agent in connection with the purchase of these cigarette lighters were those of a buying agent, and that for such services the agent received a buying commission.

(3) That, at the time of exportation of the merchandise in question, Japanese manufacturers of cigarette lighters, such as or similar to those in question, freely offered for sale and sold to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, such cigarette lighters at ex-factory prices and that such prices are invoice, ex-factory prices, plus "Case & Packing Charges," as invoiced.

I conclude as matters of law:

(1) That the proper basis for appraisement of the cigarette lighters in question is export value, as defined in section 402(d) of the Tariff Act of 1930.

(2) That such statutory value therefor is the invoice ex-factory prices, plus "Case & Packing Charges," as invoiced.

Judgment will be rendered accordingly.