(Reap. Dec. 10582)

PANATION TRADE CO. *v.* UNITED STATES

Entry No. 81916.

(Decided September 10, 1963)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

OLIVER, Chief Judge: This appeal for reappraisement relates to certain cigarette lighters, exported from Japan and entered at the port of New York. The articles were entered subsequent to February 27, 1958, and are not enumerated in the final list (T.D. 54521), issued by the Secretary of the Treasury, pursuant to the Customs Simplification Act of 1956 (T.D. 54165). Hence, they are subject to appraisement under the provisions of the Customs Simplification Act of 1956.

The cigarette lighters in question were appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T.D. 54165), at the invoice unit price, net, packed, plus an item identified on the in-

voice as "Inspection Fee $0.05 per dozen_____$50.00 (¥18,000.00)."

Export value is defined in section 402(b), as amended, *supra*, as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold, or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

There is no question herein concerning the basis of appraisement, or the invoice unit value, as found by the appraiser. The dispute herein involves the inspection fee, which, plaintiff contends, should not have been included in the appraiser's finding of dutiable export value. Plaintiff accepts the amount of the inspection fee, as shown on the invoice, but challenges the addition of the item as part of dutiable export value. Limitation of the issue appears in the record, in the form of a stipulation between counsel for the respective parties, as follows:

MR. SCHWARTZ: * * * At this time, preliminary to calling my witness, I would offer to stipulate with Government counsel as follows:

(1) That the sole issue herein is the inclusion in the export value (as that term is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) of the merchandise here involved of an item described on the invoice as "inspection fee," such item being marked with an "X" in red ink by the examiner;

(2) That the official papers transmitted to the court by the collector may be received in evidence herein without being marked.

MR. AUSTER: So stipulate.

During the course of the trial, counsel for plaintiff moved for the incorporation herein of the record in *W. J. Byrnes & Co. of N.Y., Inc. v. United States*, 46 Cust. Ct. 719, Reap. Dec. 10032, and counsel for defendant objected thereto. Plaintiff concedes that the cited case did not involve any question concerning the inspection fee, to which the present issue is entirely related. The motion is, therefore, denied.

Both parties introduced evidence herein. Oral testimony and documentary proof were offered by plaintiff. Defendant introduced two customs agents' reports. Following is a summary of the record.

The sole witness was a partner in the plaintiff company, who identified the shipment under consideration as cigarette lighters that he purchased in the course of one of his business visits to Japan. The present merchandise was manufactured by Kajita Kinzoku K. K. (hereinafter referred to as Kajita) of Tokyo, Japan, with whom the

purchase price was negotiated. The manufacturer sent the merchandise to Tokyo Panation, Ltd. (hereinafter referred to as Tokyo Pan), that shipped the cigarette lighters to plaintiff, Panation Trade Co. (hereinafter referred to as Pan Trade).

An affidavit (plaintiff's exhibit 2), executed by the president of Tokyo Pan, states that Tokyo Pan is buying agent for plaintiff, and that, in such capacity, Tokyo Pan visits manufacturers, collects samples, arranges for payment to manufacturers, checks pertinent Government regulations, prepares necessary documents for the exportation of merchandise, arranges proper shipping, and processes all claims. For such services, Tokyo Pan "receives a commission roughly of 5% of the ex factory price of merchandise purchased for the account of Panation Trade Company." Referring to the shipment under consideration, affiant testifies that Tokyo Pan, following its usual procedure, "handled the documentation for export of this shipment and paid the manufacturer, KAJITA KINZOKU K. K., a yen amount equal to $3.03 per dozen or $3030.00 total," such payment being made "out of funds remitted by Panation Trade Company per letter of credit." Specific reference to the item in controversy appears in said affidavit as follows:

4. The item described as "Inspection fee" of $.05 per dozen was paid to the Design Center (designated in Japanese as Issio Center), located in Tokyo, which is an organization under the sponsorship and control of the Japanese Government, and which is responsible for the protection of registered designs of merchandise and the prevention of design piracy. The Design Center is operated jointly by the manufacturers and the Government, and lighters are one of the classes of merchandise which must be inspected and passed before they can be exported. This inspection fee of $.0.05 was not paid to the manufacturer, Kajita Kinzoku, but rather was remitted to the Design Center.

The "STATEMENT OF TERMS OF BUYING AGENCY OF TOKYO PANATION, Ltd. FOR PANATION TRADE COMPANY" (plaintiff's exhibit 1), setting forth details of the relationship between Tokyo Pan, as buying agent, and Pan Trade, the importer, offers nothing more than what is embodied in the oral testimony and affidavit introduced by plaintiff, as heretofore reviewed.

The two reports submitted by the Government (defendant's exhibits A and B) were prepared by the Acting Regional Customs Representative in Tokyo, Japan. Their pertinency to the present issue will support the following summation.

The inspection fee, or "design adjustment fee" (as the item in controversy is referred to in the said reports), is imposed under Government regulations issued pursuant to Japanese law. Responsibility therefor lies with the Smoker's Articles Section of the Sundry Center (hereinafter referred to as the Sundry Center), a Government agency set up "to protect and prevent pirating of various designs of sundry merchandise" (exhibit A). Among the articles subject to the

fee, are certain "smoking instruments" (exhibit B), including cigarette lighters, such as those covered by the present shipment. The Sundry Center inspects the cigarette lighters for color, shape, and design, the purpose therefor being to protect Japanese manufacturers and prevent infringement on patent laws of countries to which the merchandise is exported. The shipper pays the inspection, or adjustment, fee to the Sundry Center. Moneys so received are used "for public relations on behalf of people engaged in the manufacture or selling of sundry merchandise whether for domestic consumption or for export" (exhibit A). Payment of the fee to, with consequent issue of a design certificate from, the Sundry Center, is mandatory as a condition precedent for the exportation of these cigarette lighters. Without such a design certificate, the Ministry of International Trade and Industry (MITI) will not issue a license to export. The procedure in the foreign market is explained in a sworn statement (exhibit C of exhibit A, *supra*), made by the president of Tokyo Pan—the same individual who executed the affidavit (plaintiff's exhibit 2)—stating as follows:

5. I believe the Sundry Center is established by an export control law. I do not know under what law the association is authorized to collect the design adjustment fee, but I do know that unless I pay 5¢ per dozen, I can never make a shipment of sundry merchandise. There is no way to evade the payment of design adjustment fee. Unless a certificate from the Center is attached to the application for export approval, MITI will not grant a license. Unless MITI's license is attached for customs export clearance, we can never make a shipment out of Japan.

It is abundantly clear from the record herein, as heretofore outlined, that the inspection fee in controversy is a mandatory charge imposed by the Japanese Government prior to the exportation of these cigarette lighters. As stated by the president of Tokyo Pan, "There is no way to evade payment of design adjustment fee" (exhibit C of exhibit A, *supra*).

To support plaintiff's contention, counsel, in their brief, cite a line of cases wherein certain export charges, that included inland freight, storage, hauling and lighterage, insurance premiums, and petties, were held not to be part of statutory export value. *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71; *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132; *Kurt Orban Company, Incorporated* v. *United States*, 49 Cust. Ct. 392, Reap. Dec. 10338 (application for review pending). In each of the cited cases, the court's conclusion was based on a finding that, in the ordinary course of trade, the merchandise was freely offered for sale in the principal market of the country of exportation, for export to the United States, at an ex-factory price, and that the export charges did not accrue until after the merchandise left the manufacturer's place of business, located in the principal market.

The inspection fee in question is not comparable with the export charges referred to in the three cited cases. The inspection fee accrues immediately upon completion of the manufacture of these cigarette lighters for export to the United States. It is a mandatory charge imposed under Japanese law. It is an integral element of every transaction involving the exportation to the United States of cigarette lighters, such as those under discussion. Without payment thereof, and receipt therefor of a design certificate, articles like those in question cannot be exported.

Plaintiff's evidence shows that Kajita, the manufacturer of the present merchandise, sends the cigarette lighters at an ex-factory price to Tokyo Pan, who arranges for the exportation thereof. The report (exhibit A, *supra*) refers to a practice in Tokyo, the principal market in the country of exportation for this merchandise, in which the inspection fee is included in the ex-factory price. Whatever may be the usual course of trade, the question herein is not, as suggested in plaintiff's brief, "whether the merchandise may be purchased at the factory at a price which does not include the disputed charge." The important fact is that the inspection fee must be paid in order to *export* these cigarette lighters. Included in the statutory definition of export value, section 402(b), as amended, *supra*, is the provision for "all other expenses incidental to placing the merchandise in condition, packed *ready for shipment to the United States*." [Italics supplied.] All concerned with the exportation of these cigarette lighters from Tokyo, Japan, to the United States, know of the legal compulsion to pay the inspection fee. It is an item of expense that must be incurred to get the merchandise *"ready for shipment to the United States,"* section 402(b), as amended, *supra*, and, as such, it is to be included in determining statutory export value of the present merchandise. [Italics supplied.]

Consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Reference herein has been made only to those cases deemed necessary to support the reasoning followed and the conclusions reached.

On the basis of the present record and for all of the reasons hereinabove set forth, I find as matter of fact:

1. The merchandise in question consists of certain cigarette lighters, exported from Tokyo, Japan, on August 14, 1961, and entered at the port of New York.

2. Appraisement of the merchandise was made on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T.D. 54165).

3. The cigarette lighters in question are not among the items of merchandise enumerated in the final list (T.D. 54521), issued by the

Secretary of the Treasury, pursuant to the Customs Simplification Act of 1956 (T.D. 54165).

4. The inspection fee, the item in controversy, is a mandatory charge imposed under governmental regulations, issued pursuant to Japanese law, and accrues immediately upon completion of the manufacture of cigarette lighters, such as those covered by the shipment in question, that are manufactured for export to the United States.

I conclude as matter of law:

1. That the proper basis for appraisement of the cigarette lighters involved herein is export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, and as agreed to by counsel.

2. That the inspection fee, imposed by the Japanese Government on cigarette lighters, such as the present merchandise, for export to the United States, is an item of expense within the provision embodied in the said statutory definition of export value for "all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States."

3. That the statutory export value of the cigarette lighters in question is the unit invoice value, net, packed, plus the inspection fee, as invoiced.

Judgment will be rendered accordingly.