(A.R.D. 181)

PANATION TRADE CO. *v.* UNITED STATES

Entry No. 81916.

Second Division, Appellate Term

(Decided January 11, 1965)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the appellant.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment sustaining the appraised value of an importation of cigarette lighters from Japan. (51 Cust. Ct. 366, Reap. Dec. 10582.)

The sole issue involved here, as it was before the trial court, is whether or not an item, described on the invoice as "Inspection Fee," $0.05 per dozen, was properly included by the appraiser in his determination of the value of the subject merchandise. The parties are agreed that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956,

hereinbelow set forth,[1] is the applicable statutory basis of value, and that the invoice unit value of $3.03 per dozen represents the *per se* value of the merchandise.

It further appears that, in approving the invoice unit value, the appraiser adopted the ex-factory price, as shown on the invoice of the shipper, and regarded as nondutiable items the exporter's buying commission and various and sundry charges accruing subsequent to the time the merchandise left the factory of the manufacturer.

Under these circumstances, and in view of the limitation of the issue to the question of whether or not the inspection fee forms a part of the value of the merchandise, it is immaterial that, in a prior case, it was held that this particular manufacturer freely offered its lighters for sale at ex-factory prices. Accordingly, as well as for the reason stated by the trial court, we find no error in the denial of the motion to incorporate the record in the case of *W. J. Byrnes & Co. of N.Y., Inc.* v. *United States*, 46 Cust. Ct. 719, Reap. Dec. 10032.

Much of the evidence of record in the instant case is concerned with the mechanics of the purchase of the subject lighters and the relationship between appellant and the shipper of such merchandise, the firm of Tokyo Panation, Ltd., of Tokyo. In view of the limited issue in this case, it serves largely as background tending to show that the order for the merchandise at bar was placed personally by a partner of appellant, the Panation Trade Co., with the manufacturer, Kajita Kinzoku K.K., in Tokyo, Japan. From then on, the transaction was handled by Tokyo Panation, Ltd., the buying agent for Panation Trade Co., which obtained delivery of the merchandise on behalf of appellant, paid the manufacturer from funds remitted by appellant by letter of credit, paid all other inland charges, such as freight, storage, insurance, et cetera, and prepared the export documents to cover this shipment, for which services a commission was charged. In addition, Tokyo Panation, Ltd., paid the so-called inspection fee of $0.05 per dozen under the circumstances set forth in plaintiff's exhibit 2, an affidavit of Tomoyoshi Kumazawa, president of Tokyo Panation, Ltd., as follows:

4. The item described as "Inspection fee" of $0.05 per dozen was paid to the Design Center (designated in Japanese as Issio Center), located in Tokyo, which is an organization under the sponsorship and control of the Japanese Government, and which is responsible for the protection of registered designs of mer-

---

[1] (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold, or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

chandise and the prevention of design piracy. The Design Center is operated jointly by the manufacturers and the Government, and lighters are one of the classes of merchandise which must be inspected and passed before they can be exported. This inspection fee of $0.05 was not paid to the manufacturer, Kajita Kinzoku, but rather was remitted to the Design Center.

As revealed by the regulations, provisions, and agreements set forth in full in defendant's exhibit B, and explained by Mr. Gasei Kashiwagi, chief of the Smoker's Articles Section, and Mr. Kenji Yoshii, chief of the Business Section, both of the Export General Merchandise Center of Japan, in an interview reported by the acting regional customs representative in Tokyo, Japan, in defendant's exhibit A, the so-called Design Center is, in fact, an organization formed under Japanese law for the supervision of export transactions of certain specified commodities and of smoking instruments and cigarette lighters in particular. Apparently, the parent body is an agency called the Export General Merchandise Center of Japan, more familiarly known as the Sundry Center. The Smoking Instruments Division of the Sundry Center, which is primarily concerned with the protection of lighter designs, the prevention of piracy, and the avoidance of patent infringement, both in Japan and in the countries to which Japanese cigarette lighters are exported, charges a fee, imposed in accordance with a specified schedule, for the inspection and authorization of cigarette lighter designs. Under the regulations of the Smoking Instrument Department, the person obligated to pay the design inspection fee is the exporter of the authorized goods, and the fee is payable within 3 weeks of the date of authorization.

The record further establishes that, unless a design authorization certificate is obtained and the fee paid, the Japanese Ministry of International Trade and Industry (MITI) will not issue an export license, and export clearance for the shipment cannot be obtained.

To the extent that the design adjustment certificate and fee are conditions precedent to the securing of an export license, we are in agreement with the observation of the trial judge "that the inspection fee in controversy is a mandatory charge imposed by the Japanese Government prior to the exportation of these cigarette lighters." Whether by virtue thereof the fee becomes a charge which forms part of the export value of the merchandise at bar is the question which remains to be determined.

In the view of the trial court, an affirmative answer to the question was in effect dictated by the finding that the inspection fee was a mandatory charge, which prompted the following conclusions:

1. That said mandatory charge "accrues immediately upon completion of the manufacture of these cigarette lighters for export to the United States."

2. That the inspection fee "is an integral element of every transaction involving the exportation to the United States of cigarette lighters" like the present merchandise.

3. That said inspection fee "is an item of expense, 'incidental to placing the merchandise in condition, packed ready for shipment to the United States.' "

Predicated upon our analysis and understanding the facts in this case, and for the reasons hereinafter expressed, we are constrained to disagree with the conclusions reached by the trial court.

Although the record contains some evidence that other sellers of cigarette lighters may have included the inspection fee in the prices at which they sold their wares, it seems clear that this was not the situation which obtained in the instant transaction. The weight of the evidence supports the proposition that the manufacturer's ex-factory price for the involved lighters did not embrace the design inspection fee, and that the charge was one which accrued subsequent to the time of manufacture or of sale.

The price agreed upon between the purchaser and the seller was $3.03 per dozen lighters. That this price did not include the inspection fee is evidenced by the interview between the acting regional customs representative and an official of the manufacturer (defendant's exhibit A) ; the several statements of the president of Tokyo Panation, Ltd. (plaintiff's exhibit 1, defendant's exhibit A), and as well by the appraiser's action in appraising at "invoice unit values, net, packed, plus items marked (X)."

Under the principles of law explored at length in the cases of *Dan Brechner et al.* v. *United States*, 36 Cust. Ct. 612, Reap. Dec. 8599, affirmed *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71; *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627; *Gitkin Co.* v. *United States*, 43 Cust. Ct. 508, Reap. Dec. 9524, affirmed *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145, and *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 457, Reap. Dec. 10830, such an appraisement is separable, and the statutory presumption of correctness attaching to the appraiser's action supports the correctness of all unchallenged items. As stated in *United States* v. *Supreme Merchandise Company, supra*—

* * * Where, however, ex-factory sales are shown, and it is established that such or similar merchandise is freely offered for sale to all purchasers, in the usual wholesale quantities and in the ordinary course of trade, at ex-factory prices, freight and other charges subsequently accruing are not elements entering into the determination of export value.

Accordingly, it must be assumed that the price of $3.03 per dozen was the price at which the manufacturer of the lighters in issue freely sold them in the principal markets of the country of exportation, in the

usual wholesale quantities and in the ordinary course of trade; and since the price it charged, and the price paid, was exclusive of the inspection fee, it cannot be said that the fee was a charge which accrued immediately upon completion of manufacture for exportation.

Indeed, the regulations governing the requirement for design inspection and the payment of a fee therefor specifically charge the exporter of authorized goods with the obligation to pay the fee, which payment is required to be made within 3 weeks from the date of authorization (defendant's exhibit B—Design Authorization Fee Regulations of Smoking Instrument Department of Export General Merchandise Center of Japan, Article 4, Supplementary Provision 4(2)).

As its name implies, as its regulations and procedures define, the Japanese Sundry Center is an agency formulated to control export transactions of specified commodities. Its rules are applicable to the export market alone, and there is not a scintilla of evidence to suggest that sales for home consumption fall within the scope of its operations.

Seemingly, the inspection fee is a charge contingent upon exportation, very much in the nature of an export tax, which, under settled law, forms no part of the export value of imported merchandise. "An export tax can not be added to market value to make export value, but in order to be a part of export value it must be included in market value." *Sternfeld* v. *United States*, 12 Ct. Cust. Appls. 172, T.D. 40065; *United States* v. *Tadross & Co. et al.*, 14 Ct. Cust. Appls. 10, T.D. 41528; *Henry D. Gee Co.* v. *United States*, 24 Cust Ct. 508, Reap. Dec. 7772. So that even if the fee in question is susceptible of description as an integral element in every transaction involving the exportation of cigarette lighters, it, nevertheless, does not follow that it must be included within export value, since it was not a charge which entered into the price at which this merchandise was freely sold to all purchasers for exportation to the United States.

Is it then a part of export value, for the reason that it is an expense "incidental to placing the merchandise in condition, packed ready for shipment to the United States"?

The weight of authority is to the contrary, and supports the proposition that the expression "all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States," contemplates expenses similar in nature to the cost of containers or packing, or in any event expenses for processing which affects the *per se* character of the merchandise. *T. C. Weygandt* v. *United States*, T.D. 13504, G.A. 1806; *Milbank, Leaman & Co.* v. *United States*, 25 Treas. Dec. 339, T.D. 33832; *United States* v. *Van Ingen & Co.*, 5 Ct. Cust. Appls. 432, T.D. 34970; *William Krocker* v. *United States*, 25 Cust. Ct. 351, Reap. Dec. 7847. In particular,

charges for inspection of exported merchandise have been held not to be expenses incidental to placing merchandise in condition, packed ready for shipment, when the inspection occurs after the merchandise is sold, or offered for sale, in the principal market of the country of exportation. *B. Illfelder & Co. et al.* v. *United States*, 40 Treas. Dec. 427, Abstract 44376; *N. Erlanger, Blumgart & Co. et al.* v. *United States*, 41 Treas. Dec. 504, Abstract 44686.

It does not appear that the design inspection required prior to the exportation of cigarette lighters consists of actual physical inspection of any given shipment. What seems to be involved, as indicated by the several regulations on the subject, is the consideration of a sample, description, or photograph, to the end that registered designs, shapes, and forms shall not be pirated. As aptly observed by counsel for appellant—

Since the involved fee clearly in no way enters into the actual physical condition of the goods, but is rather a mere compliance with the export documentation required by Japanese law, it clearly is not an expense incidental to "placing the merchandise in condition." Many charges may contribute to the importer's *gross cost* of getting his merchandise out of the country of exportation; but the statute most certainly does *not* specify addition of *all* costs, charges and expenses *incidental to exportation,* which is the construction seemingly utilized by the trial court. [Italics quoted.]

We do not find the design inspection fee paid for the privilege of exporting the instant merchandise to be a cost or charge necessary to place it in condition for exportation. Neither do we conceive it to be a charge which entered into the price at which the involved lighters were freely sold in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade. The court, therefore, makes the following findings of fact:

1. The merchandise involved herein consists of cigarette lighters, exported from Japan on August 14, 1961.

2. Said merchandise was entered at the invoice unit price of $3.03 per dozen, but was appraised at the invoice unit price, plus an item of 5 cents (17.75 yen) per dozen designated as an inspection fee, both entered and appraised values being predicated upon statutory export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. Said inspection fee is a charge incurred under Japanese law and regulations for the examination of the lighter design to protect against piracy or patent infringement, both in Japan and in the countries to which such lighters are exported.

4. That, at or about the time of exportation, such or similar merchandise was sold by the manufacturer to all purchasers, on an ex-factory basis, at a price of $3.03 per dozen, which did not include the design inspection fee.

5.   Certification of the design, with the consequent payment of the inspection fee, is a condition precedent to the granting of a license to export cigarette lighters from Japan.

Upon the foregoing findings, the court concludes:

1.   That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise covered by this appeal for reappraisement.

2. That the Japanese inspection fee was not a part of the price at which such merchandise was freely sold to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country of exportation.

3.   That said Japanese inspection fee is not a cost, charge, or expense incidental to placing such merchandise in condition packed ready for shipment to the United States.

4.   That the statutory export value of the subject cigarette lighters is the invoice unit value, net, packed.

5.   That the judgment of the court below is reversed.

Judgment will be entered accordingly.