(R.D. 11583)

W. J. Byrnes & Co. of N.Y., Inc. Panation Trade Co. } v. United States

Entry No. 89983–1/2, etc.

(Decided September 23, 1968)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiffs.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Dominick M. Minerva* and *Thomas Fernandes*, trial attorneys), for the defendant.

Watson, Judge: These consolidated appeals for reappraisement involve certain cigarette lighters exported from Japan. The merchandise was appraised under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. There is no dispute as to the basis of valuation. (R. 2.)

The cigarette lighters in question were entered at certain ex-factory prices alleged on the commercial invoices. They were appraised at an amount equal to the invoiced ex-factory prices, net, packed, plus "charges" for inland freight, shipping, insurance, and storage. Additionally, in most cases, inspection fees were also added to the invoiced ex-factory prices. Defendant, following the holding of the court in *Panation Trade Co.* v. *United States*, 54 Cust. Ct. 758, A.R.D. 181, concedes that the inspection fees were improperly added in arriving at the dutiable values.

Plaintiffs abandoned the following appeals for reappraisement: R65/8323, R62/12557, R65/21777 (only as to invoice No. 1), and R60/14259 (only as to electric motors).

Plaintiffs dispute only that part of the appraised value which corresponds to the so-called inland charges and contends that "since the merchandise was actually purchased at ex-factory prices, and was

freely offered and sold to all purchasers ex-factory, the inland charges accruing after the merchandise left the factory properly formed no part of dutiable value." (Plaintiffs' brief, page 1.)

The pertinent statutes herein involved are as follows:

Section 402(b) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 943:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 2633 of Title 28, United States Code, provides in pertinent part:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

The record consists of the testimony of two witnesses called by the plaintiffs, and, in addition, certain documentary evidence introduced on their behalf. (Plaintiffs' exhibits 1, 2, 3, and 4.)

Mr. Paul Roberts, a partner of Panation Trade Co., plaintiff-importer herein, testified that he has been with that company for about 20 years and that he does the purchasing for the company in Japan. He stated that, in conducting his purchases of cigarette lighters, he visits the various factories together with representatives of his buying agents, and that he negotiates with each manufacturer on the basis of ex-factory prices (R. 14, 21), that after such price negotiations have been completed, he makes further arrangements with his purchasing agents as to special packing and shipping instructions. (R. 13–14.)

Mr. Roberts further testified that, subsequently, the purchasing agents will transmit to the importer "order confirmations" or sales notes prepared by either Tokyo Panation, Ltd., or Hirotaka Kunii & Co., Japan, which detail the ex-factory prices and other charges over and above such prices. On cross-examination, plaintiffs' witness testified that the function of the purchasing agents is to handle the inspection, packing, shipping, and documentation of all the cigarette lighters "that I purchase ex-factory" and to calculate, for the importer's bene-

fit, the f.o.b. price on the sales notes or order confirmations. Plaintiffs' witness admitted, however, that he did not know of his own knowledge how the Japanese firms he purchases from sell to other purchasers of cigarette lighters. (R. 24.)

Plaintiffs' second witness, Mr. H. Iguchi, testified that he is presently employed by Ohsawa Manufacturing Co., manufacturer of cigarette lighters, as an export manager, in which capacity he negotiates sales of cigarette lighters. He stated that previously he had worked as a purchasing agent in Tokyo, in which case, in response to inquiries from customers abroad, he would locate desired merchandise and quote f.o.b. cost to the customers. (R. 26–27.) Mr. Iguchi further stated that the various makers of cigarette lighters were generally small outlets, primarily located in the Dito-Ku district of Tokyo, which he stated was the principal market for the merchandise. (R. 30.) He testified that as purchasing agent, he quoted the ex-factory price to his customers, to which was added the packing charges, inland freight, insurance premium, and his buying commission. The witness stated that the offering on an ex-factory basis was the usual and ordinary practice in the cigarette trade. (R. 34.)'

Plaintiffs' exhibit 1 is an affidavit, sworn to on December 19, 1966, of Mr. T. Kumazawa. The affiant therein states that he was president of Tokyo Panation, Ltd., from 1960 to 1963, and that in such capacity he was personally familiar with all aspects of his company's business, specifically with the purchases of cigarette lighters which his company made from various manufacturers for the account of Panation Trade Co. He stated that, in accordance with instructions from Panation Trade Co., all orders were placed with the various makers on an ex-factory basis and at ex-factory prices, for delivery at the factory. The affiant further stated that it was the responsibility of Tokyo Panation to pick up the merchandise at the factory and to arrange for all details of exportation and to pay, for the account of Panation Trade Co., all charges incurred. The affiant further stated that the foregoing method of doing business was invariably followed with all makers, specifically including but not limited to Tsuda Seisakusho; Hirota K. K.; Tamura Seisakusho; Shohei Seisakusho; Ichikawa Sangyo; Ohsawa Kinzoku K. K.; Watanabe Kinzoku K. K.; Prince Sangyo; Zaima Seisakusho K. K.; Kawakami Manufacturing Co.; and Koshi Kogyo K. K.

Plaintiffs' collective exhibit 2 is an affidavit executed by H. Yamamoto, manager of the firm of Hirotaka Kunii & Co., Tokyo, Japan. Affiant states therein that he has been employed as manager of said company, purchasing agent for cigarette lighters for the account of Panation Trade Co. of New York, since 1954, and that he is fully and

personally familiar with all purchases of lighters from Japan for Panation Trade Co.

Mr. Yamamoto further stated that all purchases of lighters are made on an ex-factory basis, for delivery at the factory, and that it is the responsibility of his company to pick up the merchandise at the factory and to arrange for details of exportation, paying all charges directly for the account of Panation Trade Co. The affiant further stated that the above method of doing business on an ex-factory basis is the "usual and ordinary basis on which lighters are purchased in the Japanese market for shipment to the United States."

Plaintiffs' exhibit 3 is an affidavit of Yoichi Ohsawa, president of Ohsawa Manufacturing Co., Ltd., which alleges that his company sells lighters to Panation Trade Co. on an ex-factory basis. He stated that Mr. Paul Roberts, plaintiffs' witness, visits the factory of his company as he visits all factories from which he buys; that he buys from the company, as it "freely offer[s] to everyone," on an ex-factory basis; and that Panation Trade Co. buys on an ex-factory basis through its buying agent in Japan; and that the latter company has always bought this way.

The sole issue herein is whether or not the appraiser improperly included the inland freight charges in his appraisement of the involved merchandise. The important factor in the determination of whether or not inland freight charges are to be excluded in the determination of the value of imported merchandise is whether or not the merchandise is ever sold or offered for sale at prices which do not embrace freight charges, and, where there is no other price than the one including the freight charge, then, under settled law, the freight charge is inextricably bound up as an integral part of the purchase price and may not be allowed. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846; *United States* v. *Lyons*, 13 Ct. Cust. Appls. 639, T.D. 41484; *Kurt Orban Company, Inc.* v. *United States*, 52 CCPA 20, C.A.D. 851.

Plaintiffs herein have the burden of establishing that such or similar merchandise was freely sold, or offered for sale, to all purchasers at the ex-factory prices. *United States* v. *Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929. In my opinion, this burden has not been met in the case at bar. While the record in the case at bar may be sufficient to establish *prima facie* that the involved merchandise was purchased from the various manufacturers at "ex-factory" prices, it falls short of proving that these manufacturers freely sold or offered their merchandise for sale to all purchasers at the ex-factory prices.

Evidence of sales to one purchaser, plaintiff-importer herein, at ex-factory prices is, in my opinion, not sufficient to overcome the pre-

sumption of correctness which attaches to the appraisement that the merchandise was freely sold or offered for sale to all purchasers only at prices which included certain charges. Unless all purchasers could buy at the ex-factory prices, prices paid by one purchaser do not constitute statutory export value. *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132; *Hub Floral Manufacturing Company* v. *United States*, 59 Cust. Ct. 627, R.D. 11349 (application for review pending).

In the *Hub Floral* case, *supra*, plaintiffs' witness testified that he did not know what the manufacturers were quoting to other purchasers nor whether he was the exclusive buyer of the merchandise there involved from the said manufacturers. In the case at bar, plaintiffs' witness, Mr. Roberts, admitted on cross-examination that he did not know how the various manufacturers involved herein sold to other purchasers. (R. 24.)

In the case at bar, no evidence has been offered by the plaintiffs from any of the manufacturers involved in these appeals in the form of either affidavits, sales records, or orders, to establish that said manufacturers sold or freely offered for sale any of the involved merchandise to *all* purchasers in the usual wholesale quantities, in the ordinary course of trade, in accordance with the provisions of the statute. Plaintiffs' exhibits 1 and 2 are affidavits by the buying agents immediately involved. However, they merely state the manner in which the importer herein purchased the particular merchandise here involved. These affidavits do not establish, in my opinion, by competent proof, that each of the involved manufacturers did sell or freely offer for sale such or similar merchandise to all purchasers in the ordinary course of trade and in the usual wholesale quantities at ex-factory prices.

The statement in plaintiffs' collective exhibit 2 that the "method of doing business on an ex-factory basis is the usual and ordinary basis on which lighters are purchased in the Japanese market for shipment to the United States," is merely conclusionary, unsupported by any evidentiary facts, and is not sufficient to establish that the merchandise was freely sold or offered for sale at ex-factory prices. *Brooks Paper Co.* v. *United States*, 40 CCPA 38, C.A.D. 495. In fact, the conclusionary statement noted above by the affiant Yamamoto in plaintiffs' collective exhibit 2 is contradicted by plaintiffs' witness Mr. Iguchi, Ohsawa's export manager, who testified that the makers of cigarette lighters offered to sell on an ex-factory basis "in many cases." (R. 34.)

The confirmations and sales notes in plaintiffs' collective exhibit 4 likewise, in my opinion, do not establish the claimed ex-factory prices as the proper value of the merchandise at bar. These confirmation and sales notes, and the entry papers herein to which they are sought to be connected, with the exception of confirmation order No. 6312 from

Tokyo Panation, Ltd., buying agent, relate to different agents, other manufacturers of merchandise than those at bar, different merchandise covering different prices, and involve periods of time different from the dates of exportation here involved. Lacking connection with the entries at bar, they afford no proof in establishing that the claimed ex-factory prices represent the proper values for the involved merchandise.

Plaintiffs in the case at bar claim that the appraisement in this case is of the type known as "severable"; that they may limit their proof to that element of the appraisement which they dispute, in this case the inland charges, and that all other elements of the appraisement, i.e., the ex-factory prices, remain clothed with the statutory presumption of correctness. The burden, however, still rests upon the plaintiffs to establish that the merchandise at bar is freely sold to *all* purchasers at prices which do not include the disputed charges. In the *Hub Floral* case, *supra*, the court stated:

> In the instant case, except for the lily of the valley items, the appraiser appraised the merchandise at the ex-factory prices set forth in the invoices plus certain charges. Plaintiff has challenged only the addition of the charges. The appraisement thus establishes that there was an export value for the imported merchandise; that at the time of exportation to the United States, such or similar merchandise was freely sold or, in the absence of sales, offered for sale in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, and that part of the appraised value was represented by ex-factory prices and part by certain charges. It does not establish that the merchandise was freely sold, or offered for sale to all purchasers at the ex-factory prices, but rather that it was so sold or offered at prices equivalent to the ex-factory prices plus the charges. * * *

On the record presented, I find as facts:

1. That the merchandise involved herein consists of various types of cigarette lighters, manufactured by various makers, and exported from Japan during the period from October 1958 through August 1966.

2. That the merchandise is not included on the Final List published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the involved merchandise was entered at the invoiced ex-factory prices including packing, but exclusive of charges for inland freight, storage, insurance, inspection fee, and buying commission.

4. That the merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced ex-factory price plus charges for inland freight, storage, insurance, and inspection fee (but not including the buying commission).

5. That the record in the case at bar does not establish that, on or about the dates of exportation, such or similar merchandise was freely sold, or offered for sale, to all purchasers, in the principal markets of Japan, in the usual wholesale quantities, and in the ordinary course of trade, for exportation to the United States, at the invoiced ex-factory prices.

I conclude as a matter of law :

1. That export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise at bar.

2. That as to reappraisements R65/8323, R62/12557, R65/21777 (only as to invoice No. 1), and R60/14259 (only as to electric motors), the appeals having been abandoned, the proper dutiable values are the appraised values.

3. That plaintiffs have failed to establish export values for the involved merchandise other than the appraised values less the inspection fees.

4. That the export values of the merchandise herein involved are represented by the appraised values less the inspection fees.

Judgment will be entered accordingly.